70558, 70559. BLACK v. PRINCE; and vice versa.

(336 SE2d 318)

BENHAM, Judge.

Appellant Black, as administrator of the Estate of Lorenzo R. Prince, seeks a reversal of the judgment entered after a jury found that appellee Reginald Prince (also known as Reginald Lumpkin) was the natural son and lawful heir of his deceased father's estate. Black contends that the verdict was contrary to law and should have been set aside, and that his motion for directed verdict should have been granted. Reginald cross-appealed, claiming his motion for directed verdict should have been granted. We have consolidated the cases for appellate purposes.

Lorenzo Prince died intestate on April 27, 1984. Thereafter, appellant Black petitioned to become administrator of the Prince estate after having been selected to do so by Sarah Prince Johnson, sister of the deceased. A caveat to the petition was filed by Reginald's mother, alleging that her son was the illegitimate child and lawful heir of the deceased. The probate court dismissed the caveat, the case was appealed to the superior court, and a jury found that appellee was the natural son and lawful heir of the deceased.

The evidence presented at trial showed that Reginald's mother was married in 1959 to Willie Lumpkin, but separated from him in 1966 and began living with decedent during the early part of that year, shortly after her separation. At the time Reginald was conceived, his mother was living with decedent and engaging in sexual relations only with him. After Reginald's birth on February 1, 1967, decedent visited the mother in the hospital, named the child Reginald, and paid the mother's hospital bills. Decedent continued to live with Reginald and his mother until 1970 when the mother moved to Florida. Reginald remained with decedent, who for the next eleven years raised the child, provided him with clothing and money, enrolled him in school as Reginald Prince, and told people that Reginald was his son. Decedent also purchased various life insurance policies in which he designated Reginald as his son and beneficiary. This treatment continued until 1981, when Reginald moved to Florida to live with his mother.

In March of 1983, decedent filed an application with the Social Security Administration for retirement benefits. The statement he made to the agency regarding whether or not he had children was that, although he had no biological proof, he had been told and he believed that appellee was his son and he treated him as such. The Social Security Administration determined that under federal law Reginald was the child of the decedent, and the agency commenced making child benefit payments to Reginald.

The evidence also showed that decedent was planning to have

Reginald's surname changed to Prince, but he died before he could do so, and that Willie Lumpkin, to whom Reginald's mother was married when Reginald was conceived and born, never contributed to the child's support. Reginald's mother testified that she never instituted support proceedings against decedent because the need to do so never arose.

1. We first address the question whether appellant Black's motion for directed verdict should have been granted, and conclude that it should have been.

A child born in wedlock is presumed to be the legitimate child of the husband, but that presumption can be overcome by clear evidence to the contrary. OCGA § 19-7-20; *Boone v. Boone,* 225 Ga. 610 (1) (170 SE2d 414) (1969). In civil suits and criminal prosecutions, "it is the duty of the jury to weigh the evidence against the presumption, and to decide, as in the exercise of their judgment, the truth as it may appear by the preponderance of the evidence." *Thornton v. State,* 129 Ga. App. 574 (1) (200 SE2d 298) (1973). The evidence presented was sufficient to overcome the presumption and to permit the jury to find that the deceased was the natural father of the child. *Parks v. State,* 155 Ga. App. 44 (270 SE2d 271) (1980); *Thornton,* supra.

However, there was no evidence to support the contention that the requirements of OCGA § 53-4-4 (c) had been met to enable the child to inherit from his natural father. There are three types of paternity adjudications that can be made, the result of which will permit an illegitimate child to inherit from or through his father: "(1) a legitimation order entered under [OCGA § 19-7-22]; (2) a legitimation order entered under other legal authority; or (3) some other court order establishing the father of the illegitimate child . . . [E]ach of these adjudications of paternity must be made during the lifetime of the father." *Poulos v. McMahan,* 250 Ga. 354, 360 (297 SE2d 451) (1982). See also OCGA § 53-4-4 (c). Nothing in the record indicates that any one of the three alternatives was met, and so the jury was precluded from finding that Reginald was the decedent's lawful heir. See *Hill v. Newman,* 254 Ga. 57 (1) (325 SE2d 767) (1985); *Poulos,* supra, Division 4. We realize that the Social Security Administration determined the child to be that of the deceased, but we are not prepared to say that the Social Security determination meets the requirement of OCGA § 53-4-4 (c), especially that portion which deals with a court order establishing the father of the illegitimate child. While this result may seem to be a case in which the sins of the father are visited upon the son, the matter is one that addresses itself to the legislature, not this court.

2. In his cross-appeal Reginald contends that his motion for directed verdict should have been granted. In light of our holding in Division 1, supra, the trial court did not err in this regard.

*Judgment reversed in Case No. 70558. Judgment affirmed in Case No. 70559. Banke, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 10, 1985 —
REHEARING DENIED OCTOBER 18, 1985 — 

*Fred L. Belcher*, for appellant.
*Daniel L. Studstill, Elsie H. Griner, Galen P. Alderman*, for appellee.