### 42894. PRINCE v. BLACK.
(344 SE2d 411)

SMITH, Justice.

We granted certiorari from the Court of Appeals in *Black v. Prince*, 176 Ga. App. 465 (336 SE2d 318) (1985), and we reverse.

The appellant, Reginald Prince (also known as Reginald Lumpkin) was conceived and born at a time his mother, Josephine, was cohabiting with Lorenzo Prince. Although Josephine was still legally married to Willie Lumpkin she had been separated from him for some time before she began cohabiting with Lorenzo. Lorenzo took Josephine to the hospital to have their child, visited her and his son while in the hospital, named the child Reginald Dwight, and paid all the hospital bills. When Lorenzo discovered that Josephine's husband's name appeared on the birth certificate as the father of the child, he asked if he could have the certificate changed to reflect his name, but was told that he could not do so since Josephine was legally married to Lumpkin. Lorenzo loved and cared for Reginald and was the only father that Reginald ever knew. When Reginald was six years old his mother moved to Florida and gave complete custody and control of Reginald to his father. Lorenzo registered Reginald in the public schools under the name Reginald Prince and treated Reginald as his son in every way and Reginald treated Lorenzo as his father. Prince purchased several insurance policies in which he named Reginald the beneficiary and listed him as his son. Lorenzo applied to Social Security for retirement benefits for himself and Reginald as his son. On the application, he swore twice under the penalty of perjury that Reginald was his son. Reginald and his father discussed having his name formally changed to Prince, but Lorenzo died before it could be done.

Lorenzo Prince died intestate and his sister asked appellee Black to qualify as administrator of Lorenzo's estate. Reginald filed a caveat and the probate court dismissed it. Reginald thereafter appealed to the superior court and a jury found that he was the son and lawful heir of Lorenzo Prince. Appellee Black appealed to the Court of Appeals and they held that the evidence presented was sufficient to permit the jury to find that Lorenzo was Reginald's natural father, but that there was nothing to support the contention that the requirements of OCGA § 53-4-4 (c) were met to enable Reginald to inherit

from his father. Thus, the Court of Appeals reversed the jury's verdict.

The appellant contends that the jury's verdict can be upheld under the theory of virtual or equitable adoption.

Foster parents who intend to adopt a child so that the child can be legally recognized as their lawful heir may accomplish their objective during their lifetimes pursuant to OCGA § 19-8-8. Likewise the father of an illegitimate child who intends to have his child legally recognized so that the child may inherit from his estate as his lawful heir may accomplish his objective pursuant to OCGA § 19-7-22. If the foster parents or the father of the illegitimate child dies intestate before the formalities are completed, the child's opportunity to inherit dies with the parents. In situations in which foster parents die intestate after they have made an agreement to adopt the child and the other elements are established, see *Crawford v. Wilson*, 139 Ga. 654 (78 SE 30) (1913), the courts have allowed the child to inherit the parent's property under the doctrine of virtual or equitable adoption.

The doctrine of virtual or equitable adoption does not fit the situation in which the mother of an illegitimate child gives custody and control to the father. It is highly unlikely that the natural father would enter into an agreement with the natural mother for the father to adopt the child because: 1) the term adoption ordinarily refers to people other than the natural parents of the child and the child, and; 2) adoption has the effect of severing the relationship of parent and child between the natural parent and the child and creating a new relationship of parent and child between the adopting parent and the child. A mother who does not want to sever the parent-child relationship that she enjoys with her child would not seek to have the father adopt the child and the father would not seek to create a new relationship with the child as the relationship is already in place. Thus, it would be unusual to have a situation in which the parties can point to an agreement to adopt the child that can be enforced in equity.

There may be cases in which there is such clear and convincing evidence that the child is the natural child of the father and that the father intended for the child to share in his intestate estate, in the same manner that the child would have shared if he had been formally legitimated, that equity will consider that done which ought to have been done. OCGA § 23-1-8. Thus the father's intentions will be fulfilled by allowing the child to inherit the property that was undisposed of by will as if the child was legitimate, although the child was not formally legitimated and cannot be considered legitimate in the eyes of the law.

Here, there was clear and convincing evidence that Lorenzo was Reginald's father. The fact that Lorenzo named Reginald as his beneficiary under insurance policies and that he applied for and attained

Social Security benefits for himself and Reginald as his son, clearly indicates Lorenzo's intention to allow Reginald to share in his estate as if Reginald had been formally legitimated.

Just as the doctrine of virtual or equitable adoption will allow a child to inherit from his intestate foster parents under certain conditions, the doctrine of virtual or equitable legitimation will allow an illegitimate child to inherit from his intestate father's estate when the evidence is clear and convincing as it was in this case.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 24, 1986.

Griner & Alderman, Elsie H. Griner, Galen P. Alderman, Perry, Moore & Studstill, Daniel L. Studstill, for appellant.
Fred L. Belcher, for appellee.
Douglas B. Brown, amicus curiae.