A95A2697. TOLBERT et al. v. WHATLEY et al.
(478 SE2d 587)

BEASLEY, Chief Judge.

Marshall Elder died intestate on October 22, 1985. On December 5, 1985, his mother, Lillian Whatley, filed a petition in the probate court for an order declaring no administration necessary, which was granted on January 6, 1986. The petition listed herself and Elder's brother, Luther Whatley, as the only heirs at law. On April 28, 1992, Lisa Tolbert and Marshall Tolbert, claiming to be the illegitimate children of Marshall Elder, filed a complaint in superior court to set aside the order of the probate court and seeking legal and equitable title to Elder's estate. On February 17, 1993, the parties entered into

a consent order dismissing the complaint and voiding the order but specifically reserving all claims and counterclaims.

The Tolberts refiled their action on August 12, 1993. They moved for the probate court's letter of administration and order to be set aside, for legal and equitable title to all of the estate, and for Lisa Tolbert's appointment as administratrix. They prayed for the return of all estate property, for the original deeds and cancellation thereof, and for an accounting of all monies and rents paid for the property. Summary judgment was granted to the Whatleys. In four separate enumerations, the Tolberts contend the court erred.

1. Appeal was originally filed in this Court, the Tolberts citing OCGA § 5-6-37 as establishing this Court's jurisdiction. It was transferred to the Supreme Court because it involved legal and equitable title to an estate consisting almost exclusively of real property. The Supreme Court has exclusive appellate jurisdiction of cases "involving title to land." Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (1). In the transfer order, we cited as a similar case over which the Supreme Court has jurisdiction, *Tucker v. Addison*, 265 Ga. 642 (458 SE2d 653) (1995).

The Supreme Court returned the appeal, citing as authority *Graham v. Tallent*, 235 Ga. 47, 49 (218 SE2d 799) (1975), and wrote "[c]ompare" *Tucker*, the case which had been cited in this Court's transfer order. Lack of clarity in jurisdictional lines extends the period for ultimate decision in a case such as this, thereby delaying finality, and causes confusion and uncertainty in bench and bar.

*Tucker* involved a decedent's relative who, claiming that the decedent had given him the land during her life, brought an action seeking to set aside and cancel a deed. The trial court granted summary judgment to the deed-holder. On appeal, the Supreme Court exercised jurisdiction and determined that only future action had been promised and that there was no evidence of a presumptive gift from the legal heir to the property. Id. at 643 (1) and (2).

In *Graham*, supra, the appellant asserted the Supreme Court had jurisdiction because the appeal involved equitable relief and title to land. Id. at 47. The suit sought an order permitting a nonjudicial foreclosure on certain land to proceed because of default on a secured promissory note. The trial court granted the order. The matter of jurisdiction was decided under an earlier constitution. It assigned jurisdiction to the Supreme Court in "all equity cases" and in "all cases *respecting* title to land." (Emphasis supplied.) In the portion of the opinion which the Supreme Court cited in the transfer order in the instant case, examples are given of some of the types of cases it had determined were not within its exclusive jurisdiction: "Suit to foreclose a materialman's lien on real estate, [cit.]; suit to confirm sale of land under power of sale, [cit.]; application by widow to ordi-

nary for approval of sale by her of property set aside as year's support, [cit.]; suit to condemn land, [cit.]; suit to determine location of disputed boundary line, [cits.]; suit by grantee for declaratory judgment that the grantor in a warranty deed was sane at the time of executing that deed, [cit.]; and suit for damages for breach of warranty of title contained in deed to land, [cit.]" Id. at 49. None of these examples pertains to actions in which a party seeks legal and equitable title to real property.

*Graham* also examines the constitutional provision requiring that cases respecting title to land be tried in the county in which the land lies (currently Ga. Const. of 1983, Art. VI, Sec. II, Par. II), and concludes that cases which must be filed in the defendant's county of residence are not cases respecting title to land in the context of the Supreme Court's jurisdiction. *Graham*, supra at 50. Here, the defendant is a resident of the same county in which the property lies. See Ga. Const. of 1983, Art. VI, Sec. II, Pars. III & VI.

*Graham* states that the Supreme Court has jurisdiction of appeals for " 'actions at law, such as ejectment and statutory substitutes, in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant for the purpose of recovering the land.' " Id. at 49. The court concluded first that the case was not within its jurisdiction "for the reason that [it] is not an action of ejectment or a statutory substitute, and it seeks sale by foreclosure rather than recovery of the land." Id. at 49. It also concluded that "suits which must be brought in the county of residence of a defendant . . . are not cases respecting title to land within the meaning of the [constitutional] provision specifying the jurisdiction of [the Supreme Court]." Id. at 50. By its transfer of this case, the Supreme Court determined it did not fit the judicially determined narrow parameters of the constitutional designation of jurisdiction. Apparently, then, the Supreme Court concluded this Tolbert case is an action for equitable title to real property, as it pertained to the land in the estate. This would be a suit in equity. In *Payne v. Terhune*, 212 Ga. 169, 170 (91 SE2d 348) (1956), the Supreme Court clearly recognized that "[a] suit to establish title to land, or to establish the evidence of title, is one that must be brought in equity, but suits to recover land upon legal title are actions at law."

We can conclude only that the Supreme Court considered the equity issue to be incidental to underlying legal questions, else it would have retained the appeal as under its exclusive jurisdiction. Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2); see *Beauchamp v. Knight*, 261 Ga. 608, 609 (1), 610, n. 1 (409 SE2d 208) (1991); *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 498 (2) (455 SE2d 601) (1995). In any event, the decision that it did not have jurisdiction, but that this Court did, is binding. Ga. Const. of 1983,

Art. VI, Sec. VI, Par. VI. See *Crotty v. Crotty*, 219 Ga. App. 408, 409-410 (1) (465 SE2d 517) (1995).

2. Each of the Tolberts' enumerations addresses the summary judgment, and the arguments are interrelated. The court's order does not specify why judgment was granted, and a variety of rationales were advanced in the motion, including the statute of limitation. The Tolberts assert the applicable limitation is found in OCGA § 9-3-32, which applies a four-year period to "[a]ctions for the recovery of personal property." Although personal property is or originally was incidentally involved in the suit, a house is the prime target. To the extent that this is a complaint for the recovery of personal property, OCGA § 9-3-32 operates to bar the action, filed more than six years after the probate court ordered no administration necessary.

The Tolberts contend the operation of OCGA § 9-3-32 was tolled by fraud on the part of the Whatleys, see OCGA § 9-3-96, in that they fraudulently represented themselves as the only heirs at law when filing the petition for letters of administration and should have listed the Tolberts as well. It is the Tolberts' burden to demonstrate facts showing such a fraud. *Hendrix v. Schrecengost*, 183 Ga. App. 201, 203 (1) (358 SE2d 486) (1987); accord *McClure v. Raper*, 266 Ga. 60 (463 SE2d 125) (1995).

There is no evidence of fraud. It was not necessary to identify the Tolberts because they were not heirs at law. Although they contend OCGA § 53-4-2 places them above the Whatleys in line of succession, illegitimate children "have no inheritable blood except that given to them by express law." OCGA § 53-4-4 (a). As the law existed at the time of Elder's death, an illegitimate child could inherit from his father only if a competent court had entered an order establishing parentage. Former OCGA § 53-4-4 (c) (1982 ed.) (Ga. L. 1980, p. 1432, § 1).[1] No such order was produced, so the Tolberts were not among those to be listed on the petition because they were not heirs at law. See former OCGA § 53-10-1 (1995 ed.). The petition did not misrepresent the facts.

To the extent this is an action in equity for the recovery of real property, appellants based it on the doctrine of "virtual or equitable legitimation." This allows an illegitimate child to inherit from his father when there is no court order establishing fatherhood but there is "clear and convincing evidence that the child is the natural child of the father and that the father intended for the child to share in his intestate estate, in the same manner that the child would have shared if he had been formally legitimated." *Prince v. Black*, 256 Ga.

---

[1] OCGA § 53-4-4 has since been amended, but the amendment does not affect the Tolberts because Elder died six years before it became effective, and it has no retroactive effect. *Sardy v. Hodge*, 264 Ga. 548, 550 (448 SE2d 355) (1994).

79, 80 (344 SE2d 411) (1986); accord *Simpson v. King*, 259 Ga. 420, 421 (2) (383 SE2d 120) (1989). In such a case, "equity will consider that done which ought to have been done. OCGA § 23-1-8."[2] *Prince*, supra at 80.

The Whatleys urge that the doctrine of virtual legitimation does not apply to this case. The decision in *Prince*, supra, was issued June 24, 1986, after the probate court's order declaring no administration necessary. Although a judicial decision as to civil law will usually be applied retroactively, it is not always so. *Fender v. Adams Extermina-tors*, 218 Ga. App. 62, 63 (2) (460 SE2d 528) (1995). "In *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), our Supreme Court set forth [the] tripart test [elucidated in *Chevron Oil Co. v. Huson*, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971)] for determining whether a decision should be applied prospectively or retroactively: '(1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past prece-dent on which litigants relied, or by deciding an issue of first impres-sion whose resolution was not clearly foreshadowed(;) (2) (b)alance of the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospec-tive operation would further or retard its operation(; and) (3) (w)eigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a hold-ing of nonretroactivity.' . . . [Cit.]" *Dart Container Corp. v. Jones*, 209 Ga. App. 331, 332 (433 SE2d 417) (1993).

Applying these factors, we conclude *Prince* is not to be applied retroactively and the doctrine of virtual legitimation is not available to the Tolberts. In recognizing the doctrine, the Supreme Court rejected existing case law that held illegitimate children had no right to inherit from their fathers unless a competent court had entered an order establishing the decedent's fatherhood. See *Hill v. Newman*, 254 Ga. 57 (1), 58 (325 SE2d 767) (1985); *Poulos v. McMahan*, 250 Ga. 354 (297 SE2d 451) (1982); *Black v. Prince*, 176 Ga. App. 465 (336 SE2d 318) (1985). Prior to *Prince*, the only interpretation under the language of the statute was that such an order was required. See for-mer OCGA § 53-4-4 (c) (1982 ed.) (Ga. L. 1980, p. 1432, § 1); *Hill*, supra; *Poulos*, supra; *Black*, supra. *Prince* itself is silent as to any ret-roactive application. To apply a new equitable doctrine retroactively could produce substantially inequitable results and do considerable damage to the administration of estates especially where, as here,

---

[2] The fact that a party claims the estate through the equitable doctrine of virtual legiti-mation was not regarded as taking the case outside of our jurisdiction, in *Youmans v. Ormandy*, 206 Ga. App. 255, 257 (1) (424 SE2d 828) (1992).

the rights of the statutory heirs had been settled by court order for some years prior to the challenge.

We recognize that the Supreme Court applied virtual legitimation in *Simpson*, supra, to a situation that arose before *Prince* was decided. However, it did so without addressing the question of *Prince's* retroactivity. "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided so as to constitute precedent." *Chives v. State*, 214 Ga. App. 786, 788 (449 SE2d 152) (1994). Further, inheritance of the *Simpson* estate had been challenged prior to *Prince*, and it appears *Simpson* was still pending when *Prince* was decided. Suit was also then pending in *Coplin v. Broadnax*, 256 Ga. 291 (349 SE2d 748) (1986); the Supreme Court remanded that case to the trial court for a factual determination in light of *Prince*, less than three months after that decision. These cases do not authorize retroactive application of *Prince* to cases where inheritance is already established.

As the doctrine of virtual legitimation is not available to the Tolberts, and they advance no other legal theory that would give them a right to inherit from Elder, the court did not err.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 17, 1996 —
RECONSIDERATION DENIED NOVEMBER 13, 1996.

*Graylin C. Ward*, for appellants.
*Rosenzweig, Jones & MacNabb, Douglas L. Dreyer*, for appellees.