S96A1256, S96X1257. WILLIAMS et al. v. BROWN et al.; and vice versa.
(476 SE2d 753)

BENHAM, Chief Justice.

These cases involve appeals from the trial court's finding that title to two tracts of land reverted to the grantor's estate and from the dismissal of Betty Brown's claim for partitioning the properties.

Milton Miller conveyed 25 acres of land to his wife, Camilla Miller, by a deed which provided as follows:

"[T]he grantor herein reserves a life estate for himself in and to said property for and during his natural life, with remainder over to Camilla Miller; and at the death of Camilla Miller the same shall go to Ralph Miller, and at the death of

Ralph Miller the same shall go to his children then living, share and share alike. In the event he dies without child or children, said 25 acre tract shall revert to my estate[.]"

On that same day, Milton Miller also conveyed 100 acres of land to his son, Ralph Miller, by a deed which provided as follows:

"[T]he grantor herein reserves a life estate for himself in and to said property for and during his natural life, with remainder over to Ralph Miller and [Eloise Miller, his wife], and at the death of Ralph Miller and Eloise Miller, the same shall go to their children then living, share and share alike. In the event they die without child or children said property shall revert to my estate[.]"

Camilla Miller, Milton Miller, Eloise Miller, and Ralph Miller have all died, in that order. Although Ralph and Eloise Miller did not have children together, Ralph had three illegitimate children: Betty Brown, Angela Williams, and Jamakael Williams.[1] Individually and as executor of the estate of Ralph Miller, Brown brought an action against Angela Williams and Jamakael Williams to determine whether they were the "children" of Ralph Miller, and also filed a petition seeking to partition the two tracts of land conveyed in the deeds. Via special verdict, the jury found that Brown, Angela Williams, and Jamakael Williams were the biological, virtually legitimated children of Ralph Miller. However, the trial court found that none of the parties were "children" under the two deeds and thus title to both tracts of land reverted to the estate of Milton Miller. The court also dismissed Brown's petition for partitioning. Angela Williams and Jamakael Williams appeal the trial court's finding that they were not "children" under the deed, and Brown cross-appeals both the trial court's finding that she is not a "child" under the deed and its dismissal of her petition for partitioning.

### Appeal No. S96A1256

1. In construing the deeds at issue, we look to the intent of the grantor, Milton Miller. *Banks v. Morgan*, 163 Ga. 468, 470 (136 SE 434) (1927). In ascertaining the grantor's intent, it is proper to look to the law in effect at the time that the grantor drafted the deed, 1961. See *Thomas v. Trust Co. Bank*, 247 Ga. 693 (279 SE2d 440) (1981). It

---

[1] Ralph also adopted a daughter, Tarrie Thomas, after the death of Eloise Miller. Although she was a party to the action brought by Betty Brown, she did not appeal the trial court's judgment.

is important to note that we are not concerned with, nor do we decide, the issue whether the term "children" in all instruments of conveyance includes illegitimate children, but we must simply decide the grantor's intent in those deeds in the case before us. Under the law in 1961, the word "children" in instruments of conveyance meant legitimate children absent evidence of a specific contrary intent. *Pasley v. State*, 215 Ga. 768 (2) (113 SE2d 454) (1960). The deed conveying 25 acres states that, ". . . at the death of Ralph Miller the same shall go to *his children* then living, share and share alike. In the event *he* dies without child or children, said 25 acre tract shall revert to my estate." (Emphasis supplied.) Because the law at the time that Milton Miller drafted the deed was that "children" only constituted legitimate children, and no evidence indicates that Milton Miller intended to include illegitimate children, we conclude that Milton Miller did not intend for the 25 acres to devolve to Ralph Miller's illegitimate children. Therefore, the trial court did not err in determining that Angela Williams, Jamakael Williams, and Brown were not "children" under this deed and were not entitled to this tract of land.

2. In looking at the grantor's wording in the deed conveying 100 acres, we reach the same result, though for a different reason. That deed states, ". . . with remainder over to Ralph Miller and Eloise Miller, his wife, the same shall go to *their children* then living, share and share alike. In event *they* die without child or children said property shall revert to my estate." (Emphasis supplied.) The clear intention of the grantor was to convey the 100-acre tract of land to Ralph and Eloise Miller's children, that is, children they had together, not separately. We conclude that the intent was not to include any illegitimate children of either Ralph or Eloise Miller, and that the trial court properly found that the parties were not "children" under this deed and that title to this deed reverted to the estate of Milton Miller.

### Cross-Appeal No. S96X1257

3. Brown contends that the trial court erred in dismissing her petition for partitioning because she was executor of the estate of Ralph Miller and thus had legal authority to bring an action to partition the lands if the lands did in fact revert to the estate of Milton Miller because Ralph had no "children." We agree.

The deed to the 25-acre tract of land establishes that the land goes to Ralph Miller upon Milton Miller's death, and upon Ralph Miller's death, the land goes to his children, and if no children, back to Milton Miller's estate. The deed to the 100-acre tract establishes that the land goes to Ralph and Eloise Miller upon Milton Miller's death, and upon Ralph and Eloise Miller's death, to their children, and if no children, back to Milton Miller's estate. Because Brown was

the executor of the estate of Ralph Miller, who was indisputably an heir to Milton Miller's intestate estate, Brown was entitled to bring an action to partition both tracts of land, whether or not the trial court found that she was a "child" under the deeds. See *Peck v. Watson*, 165 Ga. 853, 869 (142 SE 450) (1928). Accordingly, we reverse the trial court on this issue and remand the case for consideration not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Sears and Hunstein, JJ., who concur in part and dissent in part.*

SEARS, Justice, concurring in part and dissenting in part.

I concur fully with those portions of the majority opinion concerning the disposition of the 100-acre parcel of land and the erroneous dismissal of the action for partitioning. However, I believe that the majority's conclusion regarding the 25-acre parcel of land (1) is inconsistent with the clear direction of this Court regarding the rights of children born of unmarried parents, (2) fails to take full account of the precedent it purports to rely upon, and (3) is contrary to public policy. Therefore, I respectfully dissent to that portion of the majority opinion.

The doctrine of virtual legitimation permits a child born out of wedlock[2] to inherit from his or her father's estate upon a showing of clear and convincing evidence that "the child is the natural child of the father and that the father intended for the child to share in his intestate estate, in the same manner that the child would have shared if he had been formally legitimated, that equity will consider that done which ought to have been done."[3] This precedent is entirely consistent with the principles that the equal protection clause prohibits the states from discriminating on the basis of "immutable human attributes,"[4] such as "illegitimacy,"[5] and that "imposing disabilities on the [so-called] illegitimate child is contrary to the basic concept of our [legal] system that legal burdens should bear some

---

[2] I recognize the awkwardness of the phrase "born out of wedlock," but I have attempted to avoid using the term "illegitimate child" wherever possible. Webster's Dictionary defines "illegitimate" as "wrong, illicit, [or] wicked," and no child should be so described merely because of the marital status of her parents, a fact over which she has no control. As discussed infra, to place such a label on a child born of unwed parents can only cause the child great pain. In this regard, I am in agreement with the late Justice Weltner, who wrote that "the attain[ment] of [the term 'illegitimate'] should be reserved, in proper cases, for parents." *Sapp v. Solomon*, 252 Ga. 532, n. 1 (314 SE2d 878) (1984).

[3] *Prince v. Black*, 256 Ga. 79, 80 (344 SE2d 411) (1986).

[4] *Parham v. Hughes*, 441 U. S. 347, 351 (99 SC 1742, 60 LE2d 269) (1979).

[5] See *New Jersey Welfare Rights Organization v. Cahill*, 411 U. S. 619, 620-621 (93 SC 1700, 36 LE2d 543) (1973).

relationship to individual responsibility or wrongdoing."[6] More than a decade ago, this Court recognized these principles by holding that the reference to "children" in Georgia's wrongful death statute included children born out of wedlock.[7]

It is clear to me that nothing in our case law prevents the application of these sound principles to the transfer of land deeds, and that, unless there is language that clearly shows a contrary intention on the part of a grantor, a reference to "child" or "children" in a deed should be construed to include children born both inside and outside of marriage. The language used in the deeds in this case by the grantor, Milton Miller, reflects his clear intention that any and all of the children of Ralph Miller be granted a future interest in the 25-acre tract of land, including those born out of wedlock. The deed conveying the 25 acres states that "at the death of Ralph Miller the same shall go to *his* children then living, share and share alike. In the event *he* dies without child or children, said 25 acre tract shall revert to my estate." In contrast, the deed conveying the 100-acre tract of land states that "at the death of Ralph Miller *and* Eloise Miller [his wife], the same shall go to *their* children, share and share alike." Insofar as these two deeds were executed on the same day, they show a clear intention by Milton Miller that a distinction be drawn between the so-called "legitimate" and "illegitimate" children of Ralph Miller, and that the latter be granted a future interest in the 25-acre tract.

I am unpersuaded by the majority's reasoning that the grantor's intent must be ascertained by viewing the conveyance in light of the law in effect at the time that the deed was drafted. It is fundamental that in ascertaining a grantor's dispossessory intent, the plain language used in the deed will always control, so long as it does not create an illegality.[8] As explained above, the plain language used by Milton Miller in the deeds shows that he intended (1) to draw a distinction between the children born out of Ralph Miller's marriage to Eloise and any other children sired by Ralph Miller, and (2) to grant the latter a future interest in the 25-acre tract.

Furthermore, as recognized in the case law cited by the majority, even under the law in 1961, the word "child" used in a deed "generally mean[t] a legitimate child, *unless* the context show[ed] a different meaning, or the circumstances surrounding the execution of a

---

[6] *Weber v. Aetna Cas. &c. Co.*, 406 U. S. 164, 175 (92 SC 1400, 31 LE2d 768) (1972); see *Parham*, 441 U. S. at 352-353.

[7] *Edenfield v. Jackson*, 251 Ga. 491 (306 SE2d 911) (1983) (relying upon *Mathews v. Lucas*, 427 U. S. 495 (96 SC 2755, 49 LE2d 651) (1976); *Trimble v. Gordon*, 430 U. S. 762 (97 SC 1459, 52 LE2d 31) (1977)).

[8] *Moore v. Wells*, 212 Ga. 446, 449 (93 SE2d 731) (1956).

paper are such as to [have made] the words include an illegitimate child."[9] Because the circumstances in this case show that on the same day, Milton Miller made two conveyances that, when read together, clearly evidence an intention to grant a future interest to the "illegitimate" children of Ralph Miller, I believe that even under the law as it existed in 1961, those children are entitled to an interest in the 25 acres. There simply is no other conclusion that can be drawn from the distinction made in the two conveyances, each of which uses language that conspicuously evidences different intentions.

Finally, I believe that wise public policy dictates in favor of recognizing children born out of wedlock in deeds such as the ones in this case, as well as in other similar matters. It is unduly harsh to make children pay the penalty for the misconduct of their parents. As recognized some time ago by the United States Supreme Court, it is fundamentally unfair to penalize such children for immutable personal attributes that are entirely beyond their control, and which they bear no responsibility for creating.[10] In so doing, we not only punish the child, even though that child has done nothing wrong, we also perpetuate an archaic and patriarchal system that shielded the fathers of "illegitimate" children from accepting the responsibilities of parenthood.[11]

Unfortunately, during the last quarter century this nation's concepts of child-bearing and marriage have changed (I believe quite recklessly). Many now seem to believe that the birth of a child is a victimless choice between two consenting people, whether or not they are adults, or even worse, a status symbol. During my lifetime, I have witnessed marriage, for far too many people, mutate from a sacrament, to a commitment, to a mere convenience. We tolerate these attitudes at the expense of our children, and at our own moral, spiritual, and economic peril. However, until we can stem the growing tide of children born out of wedlock, we must do all we can to make certain that fathers fulfill their commitments to their children, regardless of whether they are willing to make a commitment to the child's mother. We can begin this process by refusing to relieve fathers of their responsibilities simply because they sire children outside of marriage. By relegating the so-called "illegitimate" children in this case to second-class status, I am afraid that the majority opinion unwittingly sends a contrary message.

---

[9] *Pasley v. State*, 215 Ga. 768, 770 (113 SE2d 454) (1960) (emphasis supplied).

[10] See notes 3-5, supra, and accompanying text.

[11] See *Parham*, 441 U. S. at 352 ("It is unjust and [unfair] for society to express its condemnation of procreation outside of the marital relationship by punishing the illegitimate child who is in no way responsible for his situation and is unable to change it."); *Weber*, 406 U. S. at 175 ("Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual — as well as an unjust — way of deterring the parent.").

For all of the reasons discussed above, I respectfully dissent from that part of the majority opinion concerning the 25-acre parcel of property. I am authorized to state that Justice Hunstein joins in this partial concurrence and partial dissent.

DECIDED OCTOBER 21, 1996.

*Arnold Hammack,* for appellants.
*Peter Zack Geer, B. Samuel Engram, Jr.,* for appellees.