A96A1964. DUNLAP v. MOODY et al.
(479 SE2d 456)

RUFFIN, Judge.

This case arose after the death of Charles Etta Scott, who left a considerable estate but no will. William Dunlap claims to be the biological father of Charles Etta Scott. Appellees are Cleveland Moody, who claims to be Scott's common-law husband, and Alice Stapleton,

Scott's aunt. Stapleton is related to the Kellers, who raised Scott. The trial court granted appellees' motion for partial summary judgment, denying Dunlap's heirship status. Dunlap appeals, and we affirm.

Dunlap admitted he was never married to Scott's mother and claims Scott was an illegitimate child. Therefore, Dunlap must meet the requirements of OCGA § 53-4-5 or he is barred from inheriting from Scott's estate. Pursuant to OCGA § 53-4-5 (b), fathers may inherit from illegitimate children in specifically defined circumstances: (a) if a court has entered an order legitimating the child, (b) if a court has entered an order establishing the paternity of the child, (c) if the father executed a sworn statement attesting to the parent-child relationship, (d) if the father signed the child's birth certificate, or (e) if the presumption of paternity has been established by genetic testing, such as a blood test. Dunlap admitted that he did not legitimate Scott prior to her death and that no court ever entered an order establishing him as Scott's father. He further admitted that he never had a blood test to determine whether he was Scott's father. However, Dunlap claims his name is on Scott's birth certificate and that he executed at least two sworn statements attesting to the parent-child relationship.

1. According to Dunlap, he filed Scott's birth certificate with his affidavit. However, the birth certificate he filed shows that Wallace Dunlap was the father and Essie Bea D---- (record is illegible) was the mother of a child named "Luencia Dunlap." The birth certificate further reflects that the child was legitimate. Dunlap claimed in his affidavit that he was at one time known as Wallace Dunlap and that Essie Bea Dawson was the biological mother of Scott, who was originally named "Lucinda Dunlap." However, other than Dunlap's self-serving, unsubstantiated assertions, there is no evidence in the record that this birth certificate is, in fact, Scott's birth certificate. On the contrary, the birth certificate shows on its face that it belongs to a legitimate child born in wedlock named "Luencia."

We find that the only birth certificate in the record for Scott is a delayed birth certificate issued in 1958. This birth certificate shows that Scott was the child of Charles and Gracie Keller. According to this birth certificate, which was signed and sworn to by Scott, her "Full Name at Time of Birth" was Charles Etta Keller. Dunlap's name does not appear on the delayed birth certificate. Based on the record, we find that Dunlap has not met the requirements of OCGA § 53-4-5 (b) (1) (D).

2. Dunlap also argues that he has complied with OCGA § 53-4-5 (b) (1) (C), which provides that a father of an illegitimate child may inherit from the child if the father executed a sworn statement signed by him attesting to the parent-child relationship. Dunlap admitted that before Scott's death, he never executed a sworn state-

ment attesting to his parent-child relationship with Scott. However, he claims that his application for temporary letters of administration, dated August 17, 1995, and his application for permanent letters of administration, dated September 8, 1995, qualify as the requisite sworn statements even though these statements were executed after Scott's death. We disagree.

This case is analogous to a situation where the parent dies without legitimating his child. In such situation, "the child's opportunity to inherit dies with the parents." *Prince v. Black*, 256 Ga. 79, 80 (344 SE2d 411) (1986). It is well established that an illegitimate child may inherit from his or her father only if, during the father's lifetime, (a) paternity was adjudicated, (b) the father signed the child's birth certificate, (c) the father signed a sworn statement that he was the child's father, or (d) there is clear and convincing evidence that the child is the father's natural child and the father intended that the child share in his estate. OCGA § 53-4-4; *Hill v. Newman*, 254 Ga. 57 (1) (325 SE2d 767) (1985). We find that a father's opportunity to inherit from his illegitimate child is similarly lost unless the requirements of OCGA § 53-4-5 (b) are met during the child's lifetime. To rule otherwise would allow a father to sign a sworn statement years after the alleged illegitimate child's death and defeat the finality of any estate transfers that have taken place. Additionally, such a ruling would not permit an illegitimate child, who is now dead, to dispute paternity. We, therefore, conclude that Dunlap's sworn statements signed after Scott's death do not comply with the requirements of OCGA § 53-4-5 (b) (1) (C).

3. Moreover, even if Dunlap could establish that he satisfied one of the categories of OCGA § 53-4-5 (b) (1), OCGA § 53-4-5 (b) (2) prohibits Dunlap from inheriting if it is established by a preponderance of the evidence that he "failed or refused to provide support for the child." It is clear from the record that Dunlap did not provide any support for Scott. According to Dunlap, he knew when Scott was born, but did not attend the birth. Dunlap claims Scott's natural mother gave Scott to the Kellers when she was six months old because she was financially unable to care for the child. He further admitted he was making a "pretty good" or "fair" living while Scott was a child and that he did not contribute to her care while Scott's natural mother tried to care for her. According to Dunlap, he did not know the Kellers had Scott until she was two or three years old. He admitted he had no contact with Scott's natural mother after Scott's birth and no contact with Scott until she was at least two or three years old. He further admitted that he paid the Kellers no support for Scott and never spoke with the Kellers about raising Scott.

While Dunlap argues that he occasionally exchanged gifts with Scott, he acknowledged that he spent no more than $25 to $50 a year

on Scott, and only gave her $50 when she was an adult. This Court has repeatedly held that occasional gifts do not constitute support. See *Shepard v. Landers*, 193 Ga. App. 392 (1) (388 SE2d 12) (1989). Based on the evidence, it is clear Dunlap failed to provide any support for Scott, and he is therefore precluded from inheriting from Scott's estate pursuant to OCGA § 53-4-5 (b) (2).

Accordingly, we conclude that the trial court did not err in denying Dunlap's heirship status and granting partial summary judgment to appellees.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 16, 1996.

*E. Kontz Bennett, Jr.*, for appellant.

*Thomas, Blacknall & Thomas, Willis H. Blacknall III, Joseph R. Johnson, Jr., Gibson & Spivey, Douglas L. Gibson*, for appellees.

