**Seneca FARMER and Tanya D. Farmer, Plaintiffs–Appellants,**

**v.**

**Louis LEVENSON, et al., Defendants–Appellees.**

No. 01–2186.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 2003.

Decided Oct. 30, 2003.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, for Plaintiffs–Appellants.

Philip J. Fowler, Hubert, Fowler & Quinn, Thomas J. Wiegand, Winston & Strawn, Chicago, IL, Daniel F. Konicek, Geneva, IL, for Defendants–Appellees.

Before KANNE, ROVNER, and EVANS, Circuit Judges.

## ORDER

Tanya Farmer Avery and her daughter Seneca (the Farmers) brought suit alleging that an insurance company and Seneca's former legal guardians deprived the Farmers of proceeds from the settlement of a personal injury claim through breach of contract and conversion. The district court dismissed the suit *with prejudice* because of improper venue. We vacate the dismissal and remand with directions to transfer the case to the Northern District of Georgia.

## History

When Seneca was a child, she suffered a spinal cord injury while being treated at the Fort Stewart Army Hospital in Georgia. In 1985 her mother entered into a structured settlement on her behalf with the United States government. In exchange for release of any claims stemming from the incident, the government agreed to pay the Farmers $55,000 immediately and establish a $75,000 medical trust benefitting Seneca. The government also agreed to purchase annuities payable in amounts totaling at least $1.5 million over 40 years to Seneca or her guardian (or to Seneca's beneficiary or estate should she die during that period). The government purchased these annuities from Western National Life.

In the fall of 2000, after Seneca was an adult, the Farmers, then pro se, filed this suit. They principally allege that Louis Levenson and Ann Herrera, successive guardians appointed to oversee Seneca's financial affairs, converted settlement proceeds for their own benefit. They also allege that Western National Life breached its contractual duty to make annuity payments by sending the funds to Levenson and Herrera rather than to Tanya and Seneca's father.

The defendants separately moved to dismiss, arguing lack of subject matter jurisdiction, lack of personal jurisdiction over Levenson and Herrera, improper venue, and failure to state a claim. The Farmers did not appear when these motions were initially presented, and the district court granted them. Afterwards, however, the Farmers appeared before the court and explained that they had only recently received the motions to dismiss and needed more time to respond. They also said that under the settlement agreement the government was required to assist them with prosecuting the suit and that they were waiting for the government to intervene and provide counsel. That same day, March 22, 2001, the district court vacated the dismissals and gave the Farmers until April 5 to respond to the motions.

The Farmers did not respond to the motions to dismiss but instead on April 5 asked for another 60 days because they were still waiting for the government's answer to their request for counsel. Without explanation, the district court denied the request for more time and that same day entered judgment dismissing the complaint with prejudice for "improper venue." The Farmers appeal.

After an initial round of briefing, we directed the parties to address whether the district court (1) had subject-matter jurisdiction over the Farmers' suit and (2)

properly dismissed the suit with prejudice for improper venue. The Farmers submitted a supplemental statement of jurisdiction, and we subsequently concluded that the district court indeed had diversity jurisdiction. The parties then submitted a second round of briefs on the merits of the appeal.

### Analysis

■ The Farmers first argue that the district court unreasonably denied their motion for an additional 60 days to respond to the defendants' motions to dismiss. A court generally may extend a filing deadline if a party makes a motion before the original deadline passes and shows cause for the extension. Fed. R.Civ.P. 6(b)(1). We will reverse a district court's denial of a motion for enlargement of time only if the court abused its discretion. *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 896–97 (7th Cir.2000).

Even if the district court had given the Farmers more time, their attempt to keep the suit alive in Illinois was still doomed because the Northern District of Illinois is not the proper venue for the Farmers' claims. If jurisdiction is based on diversity, a suit may be brought only in:

> (1) a judicial district where any defendant resides, if they all reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Levenson and Herrera both reside in Georgia, so venue is not proper under § 1391(a)(1). Nor is venue proper under § 1391(a)(2), since the events

giving rise to this action took place in the Northern District of Georgia. And because there is another district where the Farmers could sue, venue is not proper under § 1391(a)(3). In light of the fruitlessness of going forward in Illinois, the district court did not abuse its discretion in denying the request for more time.

■ The defendants contend that we do not have jurisdiction over the remainder of this appeal because the Farmers designated only the denial of their motion for enlargement of time in their notice of appeal. Under Fed. R.App. P. 3(c)(1)(B), a notice of appeal must "designate the judgment, order, or part of order thereof being appealed." Rule 3(c) sets out a jurisdictional requirement, but a technically imperfect notice satisfies the rule if no genuine doubt exists about who is appealing, from what judgment, and to which appellate court. *Becker v. Montgomery,* 532 U.S. 757, 767, 121 S.Ct. 1801, 149 L.Ed.2d 983 (2001) (holding that court of appeals had jurisdiction even though appellant failed to sign notice of appeal).

Although the defendants acknowledge that Rule 3(c) is to be liberally construed, *see Becker,* 532 U.S. at 767, 121 S.Ct. 1801, they rely on *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), to support their argument that this notice of appeal fails because the Farmers did not specifically state in it that they were appealing the dismissal order. In *Torres* the Supreme Court held that a putative appellant whose name was omitted from the notice of appeal was not party to the appeal since the mistake had prevented the appellees from receiving fair notice. *Id.* at 318, 108 S.Ct. 2405. After *Torres* we held that an appellant who identified specific issues in his notice of appeal would be limited to those matters on appeal, *Brandt v. Schal Associates,* 854 F.2d 948, 954 (7th Cir.1988), and

that designating an interlocutory order that serves as the sole basis for the final judgment is sufficient to call up the final judgment but excludes other decisions in the case, *Chaka v. Lane,* 894 F.2d 923, 924–25 (7th Cir.1990).

But we have allowed appeal of matters not specifically identified in the notice of appeal if the intention of the appellant is clear. *See, e.g., Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 625 (7th Cir.1993); *United States v. Michelle's Lounge,* 39 F.3d 684, 692 (7th Cir.1994) (claimants designating "any adversary hearing" effectively appealed specific order even thought it was not identified in notice of appeal); *Librizzi v. Children's Mem. Med. Ctr.,* 134 F.3d 1302, 1306 (7th Cir. 1998) (notice of appeal identifying final judgment rather than order denying reconsideration of final judgment was effective to challenge later order); *see also Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (designation of order denying motion to amend judgment effectively appealed judgment itself). The reason why an appellant is required to clearly state his intention on appeal is "to ensure that the filing provides sufficient notice to other parties and the courts." *Smith v. Barry,* 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (holding that inmate's brief in response to briefing order could have qualified as functional equivalent of notice of appeal). A faulty notice of appeal will still be effective, then, if the intention of the appellant is clear and the notice "did not mislead or prejudice" the appellee. *Foman,* 371 U.S. at 181, 83 S.Ct. 227.

Here, the district court denied the Farmers' motion for enlargement of time and simultaneously dismissed the suit. The Farmers' notice of appeal states that they, "being entitled to an extension of time to file their response to the Defendant's Motion to Dismiss of which was denied by this court on April 9, 2001[, appeal] said order to the United States Court of Appeals." Although the Farmers' notice does not point specifically to the dismissal, an appellant's failure to directly identify the order intended for appeal is not fatal. *See Barrow v. Falck,* 977 F.2d 1100, 1102 (7th Cir.1992) ("Defendants had only to draw the court's attention to the final judgment of March 19. Although this notice of appeal pointed to the order of October 1, such a gaffe is not fatal."). The defendants discerned the Farmers' intent and were in no way misled. Indeed, in their first joint brief filed in November 2001, the defendants did not even mention Rule 3(c) and, rather, conceded that we have jurisdiction over "an order on April 9, 2001 denying Plaintiffs' motion to enlarge and dismissing Plaintiffs' amended complaint, with prejudice, pursuant to Fed. R.Civ.P. 12, for improper venue." Only now, after we ordered the case rebriefed, do the defendants assert a lack of jurisdiction. We are not persuaded.

█ On the merits, the Farmers argue that the district court erred in dismissing their complaint "with prejudice" and should have either transferred the case or dismissed without prejudice. "At common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim." *Costello v. United States,* 365 U.S. 265, 285–86, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Following *Costello,* we held that when a suit is dismissed for a plaintiff's failure to comply with a precondition to the court's consideration of the merits–*e.g.,* lack of subject matter jurisdiction–that dismissal should be made without prejudice. *T.W. v. Brophy,* 124 F.3d 893, 898 (7th Cir.1997); *see Greene v. Meese,* 875 F.2d 639, 643 (7th Cir.1989) (dismissal for failure to exhaust administrative remedies should have been without prejudice); *see also Chattanoga*

*Mfg., Inc. v. Nike, Inc.,* 301 F.3d 789, 795–96 (7th Cir.2002) (holding that counterclaims made moot by dismissal of claims should have been dismissed without prejudice).

We have not yet addressed whether a dismissal for lack of venue can be made with prejudice. Several other circuits have, all concluding that a dismissal for improper venue should be without prejudice. *See, e.g., Catz v. Chalker,* 142 F.3d 279, 284–85 (6th Cir.1998); *In re Hall,* 939 F.2d 802, 804 (9th Cir.1991): *Stebbins v. Nationwide Mut. Ins. Co.,* 757 F.2d 364, 366–67 (C.A.D.C.1985); *see also* Fed. R.Civ.P. 41(b) (specifically excluding a dismissal for improper venue from the types of dismissals that normally operate as adjudications on the merits). We now join these other circuits and hold that a dismissal for improper venue should be without prejudice.

■ As a practical matter, though, the more significant question is whether the district court should have transferred the case rather than dismissed it. By statute a court in a district where venue does not lie should dismiss the complaint or "if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The interests of justice may require transfer rather than dismissal if the plaintiff mistakenly filed suit in the wrong district and the statute of limitations has since run. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Cote v. Wadel,* 796 F.2d 981, 984–85 (7th Cir.1986); *see also Phillips v. Seiter,* 173 F.3d 609, 610 (7th Cir. 1999) (noting that a "compelling reason" for transfer is that the plaintiff "will be time-barred if his case is dismissed and thus has to be filed anew in the right court").

Here, the statutes of limitations may be a concern. The Farmers' brought this suit in September 2000. The amended complaint states that this case was filed on the "second anniversary" of Seneca's eighteenth birthday and is "therefore filed within the proper Statue of Limitations." Under Georgia law, if a cause of action accrues when a plaintiff is a minor, the limitations period is tolled until she becomes an adult. *See* Ga.Code Ann. § 9–3–90. It is unclear whether Seneca is still a ward and how that would affect her status, but assuming that she became an adult free of legal disability in the fall of 1998, five years already have passed since then. Thus it is plausible that at least some of her claims would be barred if filed today. *See, e.g.,* Ga.Code Ann. § 9–3–32 (conversion claims must be brought within four years of accrual of cause of action); *Tolbert v. Whatley,* 223 Ga.App. 508, 478 S.E.2d 587, 590 (Ga.Ct.App.1996) (claim seeking return of estate assets subject to four-year limitations period for conversion actions). Tanya's claims may also be barred by the applicable limitations periods.

The defendants are silent about how Georgia's statutes of limitations will affect the Farmers' claims, instead insisting that any harsh effects of a dismissal are warranted in this case. At oral argument the attorneys for the insurance company and Levenson extensively described the parties' litigation history, both representing that state courts in Georgia and North Carolina had removed Seneca from Tanya's custody and that the Georgia courts entered monetary judgments against Tanya. Insurer's counsel blamed Tanya for the prior litigation, characterizing this suit as just the last in a long succession of attempts by Tanya to take the settlement proceeds for her personal use. Levenson's counsel argued that this history is relevant to the issue of transfer because the earlier proceedings took place in Georgia and North Carolina, and so the Farmers must

have known that there was no basis for bringing suit in Illinois. The prior litigation is also relevant, counsel asserted, because it shows that the Farmers have abused the legal process and should suffer dismissal as a sanction for their behavior.

We see nothing in the record to suggest that the district court chose dismissal with prejudice rather than transfer of the case to penalize the Farmers for pressing a frivolous or vexatious lawsuit. When asked whether the representations made at argument find support in the record before us, Levenson's counsel assured us that the parties' litigation history could be "pieced together" from allegations in the Farmers' complaint. We disagree. What the complaint does allege is that Tanya and the guardians struggled over the management of settlement funds in and out of court and that Levenson "filed three false reports" in the Georgia and North Carolina juvenile courts seeking custody of Seneca. The complaint does not mention any particular lawsuit or any specific court judgment adverse to Tanya. Nor is there is anything in the record hinting that this suit is part of a series of abusive court actions initiated by Tanya for personal gain. Rather, the complaint focuses on the defendants' alleged wrongdoings, including allegations that Levenson instigated court proceedings under false pretenses and lied to the courts in order to take settlement proceeds for his personal use.

Regardless, counsel for the defendants defeat their own argument against transfer when they acknowledge that in the prior litigation the parties skirmished most recently in Illinois state court in a dispute over Seneca's custody. If the assumption is that the Farmers should have known to bring this suit where they litigated against the defendants before, then–by the defendants' logic–Illinois was perhaps the best choice because it was last in line. On this record we have no reason to conclude that

the Farmers, filing pro se, brought their federal suit to the wrong district other than by mistake, especially if they believed that the defendants' state-court appearances were enough contact with the Northern District of Illinois to give the district court personal jurisdiction over the defendants. All this record establishes is that the Farmers apparently made a mistake that was easy to commit, and so the penalty of dismissal, even without prejudice, is too harsh. *See Goldlawr*, 369 U.S. at 466, 82 S.Ct. 913 ("The problem which gave rise to the enactment of [28 U.S.C. § 1406(a)] was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.").

We look to the alleged events underlying the Farmers' claims to determine where venue is proper. *See* 28 U.S.C. 1391 § (a). The alleged events giving rise to the Farmers' breach of contract and conversion claims occurred in the Northern District of Georgia. The complaint also references the custody dispute between Tanya and the guardians, a dispute that primarily took place in Georgia but was apparently also litigated in North Carolina and Illinois. However, the litigation that took place outside of the Northern District of Georgia does not constitute "a substantial part of the events or omissions giving rise to the claim[s]" as required by 28 U.S.C. § 1391(a)(2). The Northern District of Georgia is the proper venue for the Farmers' claims.

## Conclusion

We VACATE the dismissal and REMAND to the district court with directions

to transfer this case to the Northern District of Georgia.