A08A2105. SIRMANS et al. v. THE BOARD OF TRUSTEES OF THE SOUTH GEORGIA ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, INC. et al.
(672 SE2d 423)

RUFFIN, Presiding Judge.

The Board of Trustees of the South Georgia Annual Conference of the United Methodist Church, Inc., Reverend Don L. Adams, and Reverend Tony Crosby (collectively, "the UMC") filed a petition for declaratory judgment and an injunction against Harry Sirmans, Julian Haskins, Mabel Sirmans, Ricky Sirmans, Reavis Kyser, Randy Sirmans, Brian Sirmans, Imogene Haskins, Frank Drake, and Reverend David Akins (collectively, "the Sirmans"), seeking control and use of the property of the Live Oak United Methodist Church in Atkinson County. The UMC filed a motion for summary judgment, which the trial court granted, and this appeal followed.[1] The Sirmans allege in several enumerations of error that the trial court erred in granting summary judgment to the UMC. Finding no error, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts warrant judgment as a matter of law.[2] We conduct a de novo review of the grant of a motion for summary judgment, viewing the evidence and all reasonable inferences drawn therefrom in a light favorable to the nonmovant.[3]

So viewed, the record demonstrates that in 1896, Elizabeth Corbett recorded a deed conveying the property at issue to nine

---

[6] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 767 (6) (482 SE2d 362) (1997), citing *Kicklighter v. Woodward*, 267 Ga. 157, 162 (5) (476 SE2d 248) (1996).

[1] The Sirmans filed a notice of appeal in the Supreme Court of Georgia, and it transferred the case to this Court.

[2] See OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] See *Wynns v. White*, 273 Ga. App. 209, 210 (614 SE2d 830) (2005).

individual grantees.[4] The deed provided that:

> [I]n consideration of the natural love and affection she has for her neighbors the said Elizabeth M. Corbett hereby gives, grants, and conveys to the said S. B. Pafford, S. L. Marion, Charles W. Corbett, John Haskin, George W. Hudsock, J. J. Richardson, E. M. Pafford, David Fincher, W. M. Pafford, and others their heirs and assigns and their successors and their heirs and assigns [sic] a parcel of land lying in said county . . . shown as the Live Oak School House Lot, **said lot to be used for a school house and church house lot and graveyard** . . . together with the rights and privileges thereto belonging forever in fee simple.[5]

In 1938, Waldo Henderson conveyed the property to "J. B. Herndon, Mrs. Martha Haskins, and their successors, as trustees of the Live Oak M. E." The deed states that Henderson's conveyance was made

> [i]n trust that said premises shall be used, kept, maintained and disposed of as a place of devine [sic] worship **for the use of the ministry and membership of the Methodist Epispoeal [sic] Church South; subject to the disciplin[e], usage, and Ministerial appointments of said Church. . . .**[6]

In 1998, The Langdale Company executed a deed conveying a tract of land, including the land described in the 1938 deed, to "The Trustees of Live Oak Church." The purpose of this deed was to enlarge the cemetery adjoining Live Oak Church.

The church, identified by signs as the "Live Oak United Methodist Church," accepted ministers assigned to it by the UMC, who paid a portion of the ministers' salaries. In 2003, 16 members of the Live Oak United Methodist Church advised the South Georgia Conference that they were going to withdraw from the UMC and that the church would thereafter be known as "Live Oak Methodist Church."[7] The UMC filed a petition for declaratory judgment and an injunction, seeking control over the church property. The trial court granted summary judgment to the UMC, holding that the church property, including improvements thereon

---

[4] Apparently, before 1896, the property contained a schoolhouse and a cemetery.

[5] (Emphasis supplied.)

[6] (Emphasis supplied.)

[7] Although the Sirmans hold worship services on the property, they do not claim title to the church property.

[is] held in trust to be used, kept and maintained as a place of divine worship of the ministry and members of The United Methodist Church; subject to The Discipline, usage and ministerial appointments of said Church . . . and similarly, all personal property of Live Oak United Methodist Church is held in trust for said use and purpose.

The trial court also enjoined the Sirmans from using the name "Live Oak Methodist Church" and otherwise interfering with the UMC's use and enjoyment of the church property.

1. In their answer, the Sirmans asserted that they were not proper parties to the lawsuit because they held no title to the church property and that the UMC had failed to join the owners of the property as indispensable parties. On appeal, the Sirmans argue that the trial court erred in failing to resolve this issue before granting summary judgment to the UMC. We disagree.

Specifically, the Sirmans contend that the owners of the property were indispensable because the declaratory judgment sought by the UMC "would have a manifestly negative impact on the rights and interests of the title owners." And, the Sirmans urge, "[a]ny declaration that a third party has the right to use the property is patently prejudicial to the rights of the title owners." In support of their position, the Sirmans filed the affidavits of individuals identifying themselves as heirs of three of the nine named grantees in the 1896 deed essentially stating that they have never given up their ownership rights in the property and "claim[ing] partial ownership of [the church] property as an heir [of one of the grantees in the 1896 deed]."

OCGA § 9-11-19 (a) provides that

[a] person who is subject to service of process shall be joined as a party in the action if: (1) In his absence complete relief cannot be afforded among those who are already parties; or (2) He claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest; or (B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Here, the affiants are not indispensable parties to this action. The declaratory judgment and injunction simply establish that, *between the UMC and the Sirmans*, the UMC has the right to control the church property. Disposition of this case will not impair the

ability of the affiants to assert their rights to the property.[8] Moreover, because they are not in possession of the property, the affiants are not indispensable parties to a suit concerning action thereto.[9] Thus, the Sirmans' argument that the trial court erred in granting summary judgment to the UMC before joining the affiants as indispensable parties provides no basis for reversal.

2. The Sirmans also allege that the trial court erred in granting summary judgment because there was an outstanding motion to intervene. Elizabeth Drake, one of the heirs that the Sirmans claimed as an indispensable party, filed a motion to intervene pursuant to OCGA § 9-11-24 (a) (2), on behalf of herself and all of the heirs to the 1896 deed.

OCGA § 9-11-24 (a) (2) provides that

> [u]pon timely application anyone shall be permitted to intervene in an action . . . [w]hen the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Drake did not file her motion to intervene until the day of the summary judgment motion hearing. According to the UMC, the motion was therefore untimely.[10]

Pretermitting whether the motion was timely, however, Drake is not entitled to intervention. The trial court's order granting declaratory relief to the UMC would not preclude the property owners from protecting their rights to the property, including pursuing claims against others.[11] Thus, Drake had no interest that required protecting by intervention.[12] It follows, therefore, that the trial court did not err in granting summary judgment to the UMC before adding Drake as an indispensable party as asserted by the Sirmans.

---

[8] See OCGA § 9-11-19 (a); *Pickett v. Paine*, 230 Ga. 786, 796 (4) (a) (199 SE2d 223) (1973) (party is not indispensable to an action where the case can be decided on its merits without prejudicing the rights of such party).

[9] See *Aponte v. City of Columbus*, 246 Ga. App. 646, 650-651 (7) (540 SE2d 617) (2000).

[10] See OCGA § 9-11-24 (a); *Greer v. Fed. Land Bank &c.*, 158 Ga. App. 60, 61-62 (279 SE2d 308) (1981) (motion to intervene was not timely when served two days before hearing on confirmation of sale of real property); *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 958 (3) (216 SE2d 897) (1975) ("intervention must be timely").

[11] See OCGA § 9-11-24 (a) (2).

[12] See *Zinser v. Tormenta, S.A.*, 213 Ga. App. 824, 825 (1) (446 SE2d 249) (1994); *Sloan v. Southern Floridabanc Fed. S & L Assn.*, 197 Ga. App. 601, 603 (2) (398 SE2d 720) (1990); *Gregory v. Tench*, 138 Ga. App. 219, 220 (1) (a) (225 SE2d 753) (1976).

3. Next, the Sirmans argue that the trial court erred in granting summary judgment to the UMC because there were genuine issues of material fact remaining regarding title to and ownership of the property. But the UMC does not claim ownership of the property. Instead, the UMC sought a declaratory judgment to determine whether it or the Sirmans have the right to control the property. The trial court concluded that the UMC had the right to use and maintain the property as a place of worship; it did not render judgment regarding ownership of the property. Thus, any issues regarding title to and ownership of the property are not genuine issues of material fact which would preclude summary judgment.[13]

4. The Sirmans claim that the trial court erred as a matter of law to the extent that it found that the UMC was entitled to any interest in the property at issue. We find no merit to this claim.

OCGA § 14-5-46 validates deeds of conveyance for church properties according to the limitations set forth in the deeds and for use "according to the mode of church government or rules of discipline exercised by such churches or religious societies." And conveyances to trustees under that Code section "shall be subject to the authority of the church or religious society for which they hold the same in trust and may be expelled from said trust by such church or society, according to the form of government or rules of discipline by which they may be governed."[14] The Supreme Court of Georgia has recognized that the UMC is a connectional denomination subject to the Book of Discipline, the constitution of the UMC.[15] "This means that the local church is a part of the whole body of the general church and is subject to the higher authority of the organization and its laws and regulations."[16]

The Book of Discipline requires that every deed of property to a local church shall include a trust clause, which provides that the property is held in trust for the use of the ministry and members of the UMC, subject to the provisions of The Discipline.[17] However, even in the absence of such a trust clause, the property is nevertheless held in trust for the UMC if any of the following three factors can be shown:

---

[13] See *MEA Family Investments v. Adams*, 284 Ga. 407, 410 (667 SE2d 609) (2008) (possible factual dispute as to immaterial issues does not preclude summary judgment); *Adams v. Gay*, 270 Ga. App. 65, 66 (1) (606 SE2d 26) (2004); OCGA § 9-11-56 (c).

[14] OCGA § 14-5-47.

[15] See *Carnes v. Smith*, 236 Ga. 30, 32 (1) (222 SE2d 322) (1976).

[16] Id. See also *Holiness Baptist Assn. v. Barber*, 274 Ga. 357, 358 (552 SE2d 90) (2001).

[17] See The Book of Discipline, Ch. 6, § I, Par. 2503, pp. 649-650 (2000 ed.).

a) the conveyance of the property to a local church or church agency (or the board of trustees of either) of The United Methodist Church or any predecessor to The United Methodist Church;

b) the use of the name, customs, and polity of The United Methodist Church or any predecessor to The United Methodist Church in such a way as to be thus known to the community as a part of such denomination; or

c) the acceptance of the pastorate of ordained ministers appointed by a bishop or employed by the superintendent of the district or annual conference of The United Methodist Church or any predecessor to The United Methodist Church.[18]

In the 1938 deed, Waldo Henderson conveyed the property

to trustees of the Live Oak M.E. South . . . [i]n trust that said premises shall be used, kept, maintained and disposed of as a place of devine [sic] worship for the use of the ministry and membership of the Methodist Epispoeal [sic] Church South; subject to the disciplin[e], usage, and Ministerial appointments of said Church. . . .

Thus, the deed contains a trust clause required by The Book of Discipline. The Sirmans argue, however, that no valid property interests were conveyed by that deed because Waldo Henderson was not a grantee or an heir of a grantee of the 1896 deed. But we need not address the Sirmans' contention that their ostensible challenge to the validity of the deed somehow invalidates the trust clause, as the facts of this case clearly indicate that — as between the UMC and the Sirmans — the property is held in trust for the UMC.

First, the notice — which precipitated this lawsuit — provided by multiple members of the church and addressed to the district superintendent of the Valdosta District of the United Methodist Church specifically stated that "it is with a heavy and saddened heart that we members of Live Oak Methodist Church inform you that **we will withdraw from the United Methodist Church**."[19] Moreover, the Live Oak Church has posted signs identifying itself as "Live Oak United Methodist." A district superintendent appointed by the UMC South Georgia Conference served Live Oak Church, and

---

[18] Id. at p. 651.

[19] (Emphasis supplied.)

the church accepted and complied with some of the apportionments assigned to it by the UMC. The insurance policy covering the Live Oak Church building and other structures and personal property located on the church property listed the owner as "Live Oak Methodist Church"; the checks used to pay the insurance premiums were printed with the words, "Live Oak United Methodist." Further, from 1908 until 2004, the Live Oak United Methodist Church accepted the ministers assigned to it by the South Georgia Conference of the UMC; the ministers' salaries were paid in part by the Bishop of that Conference.

Under these circumstances, where the Live Oak Church had a relationship with the UMC and accepted the benefits afforded to it as a result, the Sirmans — as members of the local church — are precluded from now disclaiming affiliation with the UMC and cannot now deny the existence of a trust for the benefit of the UMC.[20]

> A local church, if it desires to remain independent of the influence of a parent church body, must maintain this independence in the important aspects of its operation — e.g., polity, name, finances. It cannot, as here, enter a binding relationship with a parent church which has provisions of implied trust in its constitution, by-laws, rules, and other documents pertaining to the control of property, yet deny the existence of such relationship. It does not matter whether such agreement to be bound is memorialized. A local church cannot prosper by the benefits afforded by the parent, participate in the functioning of that body, yet successfully disclaim affiliation when the parent acts to the apparent disadvantage of the local, so to shield from equitable or contractual obligation the valuable property acquired by the local church either before or during such affiliation.[21]

Thus, the trial court did not err in granting summary judgment to the UMC.[22]

5. The Sirmans challenge the trial court's grant of an injunction prohibiting them from using or attempting to use the name "Live Oak Methodist Church." Specifically, the trial court's order states that

---

[20] See *Carnes*, supra at 39; *Crumbley v. Solomon*, 243 Ga. 343, 345 (254 SE2d 330) (1979).

[21] *Carnes*, supra at 39.

[22] See id.; *Crumbley*, supra.

[t]he use of the name "Live Oak Methodist Church" for a non-connectional, separate and distinct church organization unlawfully deprives The United Methodist Church and its local connectional church, Live Oak United Methodist Church, of their identities, and the defendants are hereby restrained and enjoined from using or attempting to use this name other than as a part of The United Methodist Church.

The Supreme Court of Georgia has held that

[t]he local name of a church is of great value, not only because business is carried on and property held in that name, but also because members associated with the name the most sacred of their personal relationships and the holiest of their family traditions. And, since the right to use the name inheres in the institution, not in its members; when they cease to be members of the institution, use by them of the name is misleading and, if injurious to the institution, should be enjoined. Thus, the local members in defecting from the established church have given up their right to use the local church name.[23]

The Sirmans contend that although the congregation used the services of a UMC preacher "for some time," the congregation was not commonly known as a connectional branch of the UMC. Thus, the Sirmans argue, "a genuine issue of material fact exists as to whether members of the community of Atkinson County would, in fact, assume that Live Oak Methodist Church is a branch of the UMC or otherwise be confused as to the identity of the church, rather than an independent Methodist Church." This argument is unpersuasive.

Live Oak United Methodist Church existed as early as 1896, and according to records kept by the UMC, the UMC assigned pastors to the church beginning in 1908. The church signs posted at the property identify it as "Live Oak Methodist Church." Under these circumstances, the Sirmans' use of the name "Live Oak Methodist Church" would be misleading and confusing.[24] Thus, we affirm the judgment of the trial court granting the injunction by summary judgment.[25]

---

[23] (Citations and punctuation omitted.) *Carnes*, supra at 41 (2).

[24] See id.

[25] See id.

6. The Sirmans maintain that the trial court erred in enjoining and restraining them from interfering with the UMC's use of the property because there are material issues of fact existing "both with respect to the existence of any alleged right to use of the property by the UMC and with respect to the necessity of an injunction to prevent [the a]ppellants from 'interfering' with any such right." According to the Sirmans, there is no evidence in the record that they have any intention to prevent the UMC from using the church property or that they have done so in the past. The record belies this assertion.

The UMC has submitted evidence showing that on June 20, 2004, appellant Frank Drake refused to allow the newly assigned UMC pastor to lead the service at the church, advising that he had arranged for another minister to do so. According to one witness, "Drake's statement and actions effectively refused to allow [the UMC pastor] to perform his duties as the pastor assigned to Live Oak United Methodist Church, either then or at any time thereafter." Based on this evidence, the trial court did not err in granting summary judgment on the UMC's claim for an injunction precluding the Sirmans from interfering with the UMC's use of the church property.[26]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED DECEMBER 22, 2008 — 

*Berrien L. Sutton*, for appellants.
*Jones, Cork & Miller, Frank C. Jones, W. Warren Plowden, Jr., Cater C. Thompson, Robert B. Sumner*, for appellees.