### S10A0724. KEMP et al. v. NEAL et al.
(704 SE2d 175)

PER CURIAM.

This case involves a dispute between appellants, who are the trustees of Williams Chapel African Methodist Episcopal Church, and appellees, who are the national African Methodist Episcopal Church and its officials. The dispute is over the ownership of church property in Screven County where Williams Chapel has held services for years as an AME church. In 2008, however, several members of Williams Chapel sought to terminate the local church's relationship with the national AME church. As a result, the national church and its officials filed a petition to quiet title in the property and for declaratory judgment and injunctive relief.[1]

After a final hearing, the trial court found that the AME church is a hierarchical church; that Williams Chapel at all times conducted its affairs as a member of the AME Church, Inc.; that, under the church discipline, all real and personal property of local churches is held for the benefit of the national AME church; that no deed exists as to the real property of Williams Chapel;[2] and that the local church apparently had had permissive use of the property for over 70 years. The trial court determined that the possessory interest in the property held by Williams Chapel and its trustees was held in trust for the benefit of the national AME church, and ordered that all property of Williams Chapel and all bank, mortgage, insurance, and other like accounts of Williams Chapel be delivered to appellees

---

[1] Four months after the litigation began, the trial court entered a temporary order which required the national church to assume the indebtedness secured by the real property, to pay all debts and bills associated with the local church, and to maintain and pay for insurance on the church van. Williams Chapel was required to remit $380 monthly to the national church in exchange for use of the local church building and van.

[2] The trustees of Williams Chapel executed a security deed in 2003 by which they conveyed the real property to a bank to secure a promissory note for the $40,443.94 the bank had loaned Williams Chapel. The bank apparently accepted the security deed based upon the title affidavits of two long-time members of Williams Chapel who stated there had never been a claim, question, or controversy concerning the local church's right of ownership of the property.

within four days. The trial court also ordered that the names of appellants be removed from all accounts and that the national AME church assume all indebtedness on any personal property and indemnify appellants from same. Appellants appeal from that order.

1. "It is incumbent upon this Court to inquire into its own jurisdiction, regardless of whether the issue of jurisdiction is raised by the parties. [Cit.]" *In the Interest of K. R. S.*, 284 Ga. 853 (1) (672 SE2d 622) (2009). Appellants rely upon our subject matter jurisdiction over "[c]ases involving title to land . . . ." Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (1). Pretermitting that issue, however, we find that this appeal comes within our appellate jurisdiction over "[a]ll equity cases . . . ." Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2).

"For purposes of this Court's subject matter jurisdiction, " 'equity cases" are those in which a substantive issue on appeal involves the legality or propriety of equitable relief sought in the superior court. . . .' [Cit.]" *Lamar County v. E.T. Carlyle Co.*, 277 Ga. 690, 691 (1) (594 SE2d 335) (2004).

> In 1991, this Court issued *Beauchamp v. Knight*, [261 Ga. 608 (409 SE2d 208) (1991),] which held that whether an action is an equity case for the purpose of determining jurisdiction on appeal "depends upon the *issue* raised on appeal, not upon how the case is styled nor upon the kinds of relief which may be sought by the complaint," [cit.] and that "(c)ases in which the grant or denial of such relief are merely ancillary to underlying issues of law, or would have been a matter of routine once the underlying issues were resolved, are not equity cases." [Cit.]

(Emphasis in original.) *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745, 747 (2) (524 SE2d 464) (1999). The case lies outside this Court's equity jurisdiction only if determination of the equitable issue in the appeal "flows directly" from the resolution of a legal question. *Lee v. Green Land Co.*, 272 Ga. 107-108 (527 SE2d 204) (2000). "Where equitable relief must routinely follow upon the determination of legal issues, there is no question of 'the legality or propriety of equitable relief' and the case is not one in equity." *Lamar County v. E.T. Carlyle Co.*, supra.

The trial court here granted equitable relief when it ordered that appellants' "names shall be removed from all accounts, and such accounts (bank, mortgage, insurance, and any other like accounts) shall be delivered to" appellees by a certain date and that the "Plaintiff Church shall assume all indebtedness on any personal property and shall indemnify [appellants] from same." In their enumerations, appellants have included an alternative contention

that the trial court should have protected them more fully by requiring immediate payment of the indebtedness on the renovation as a condition of the AME church taking title to the property. See Division 4, infra. The determination of this issue of precisely how the trial court should have molded the equitable relief to protect appellants does not flow directly or automatically from the legal conclusion that the real property is held in trust for the AME church. Review of that equitable issue would require examination of the trial court's exercise of discretion and depends upon equitable considerations. See *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 510 (5) (556 SE2d 114) (2001).

Justice Benham's dissent fails to address this analysis, and its approach would destroy much of our equity jurisdiction. That approach would require the anomalous result of divesting this Court of its subject matter jurisdiction over all equity cases even when we are asked to review a decision by the trial court which, like the one at issue in this case, obviously requires a weighing of equitable considerations in order to determine the scope of equitable relief.

Because resolution of the equitable issue raised here would not be a matter of routine once the underlying legal issues are resolved, we conclude that a substantive issue on appeal involves the legality or propriety of equitable relief. Therefore, this appeal comes within this Court's jurisdiction over equity cases, and we will proceed to determine the merits thereof.

2. Appellants contend the trial court erred in ruling that Williams Chapel and its trustees held the real property in trust for the national AME church and that the assets of Williams Chapel were the property of the national church. While the State has a legitimate interest in the peaceful resolution of property disputes and provides a civil forum in which the ownership of church property can be determined, "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes." *Jones v. Wolf*, 443 U. S. 595, 602 (99 SC 3020, 61 LE2d 775) (1979). As a result, civil courts use "neutral principles of law," i.e., statutes, charters, relevant deeds of conveyance, and the organizational constitutions and bylaws of the denomination, to resolve hierarchical church property disputes. *Georgia Dist. Council of Assemblies of God v. Atlanta Faith Memorial Church*, 267 Ga. 59 (1) (472 SE2d 66) (1996); *Crumbley v. Solomon*, 243 Ga. 343 (254 SE2d 330) (1979). A trust in favor of the general church can be created by the deed on the property, can be implied under state statutes, or can be required by the constitution of the general church. *Presbyterian Church v. Eastern Heights Presbyterian Church*, 225 Ga. 259, 260 (167 SE2d 658) (1969). See also *Carnes v. Smith*, 236 Ga. 30, 35 (222 SE2d 322) (1976). However, as the trial court found, there is no deed

on the property in this case. Furthermore, while Georgia statutorily recognizes that trustees to whom deeds of conveyance are executed for the use of a church or religious society are subject to the authority of the church for which they hold same in trust and may be expelled from that trust according to the rules of discipline by which they may be governed (OCGA §§ 14-5-46, 14-5-47), these statutes are not applicable to the case before us because there is no deed of conveyance to the trustees of Williams Chapel. The record contains two recorded title affidavits executed by lifetime attendees of Williams Chapel AME, one 79 years old and the other 80, asserting there has never been a question concerning the church's right of ownership of the property; however, recorded affidavits relating to land are not conveyances or a legal proceeding by which one may attack the title to realty or cure a defect in the title. *Maxco v. Volpe*, 247 Ga. 212, 214 (274 SE2d 561) (1981); OCGA § 44-2-20.

In the absence of deeds of conveyance and of applicable statutes, we turn to the Book of Discipline, the governing ecclesiastical doctrine and constitution of the AME church.[3] It provides that "the title(s) to all real, personal, and mixed property held . . . by the local churches, shall be held IN TRUST for the [national] African Methodist Episcopal Church, Inc., and subject to the provisions of [the Book of Discipline]." The Book of Discipline provides that title to all real property held by the local church is held in trust for the national AME church and does not indicate that a written document is necessary to create the trust. The question, then, is whether Williams Chapel holds title to the real property by means other than a written trust document.

The trial court's finding of "permissive use" of the property, even when that use spans 70 years, "cannot be the foundation of a prescription until an adverse claim and actual notice to the other party." OCGA § 44-5-161 (b). There was no evidence presented that an adverse claim was made and actual notice was given, so Williams Chapel does not hold prescriptive title in trust for the national AME church. However, it is undisputed that the church obtained the property by gift years ago and took possession and built the church building. While no deed of conveyance was found, "a donee of land under a parol gift . . . who . . . enters into possession and makes valuable improvements upon the faith of the gift, acquires a perfect equity as against the donor, his heirs, and those claiming under him with notice. . . . [Cit.]" *Smith v. Lanier*, 199 Ga. 255, 264 (34 SE2d

---

[3] The Book of Discipline is more formally known as "The Doctrine and Discipline of the African Methodist Episcopal Church." The appellate record of this case contains only one page of the Book of Discipline.

91) (1945). See also *Whittemore v. Whittemore*, 275 Ga. 536, 537 (570 SE2d 333) (2002). The perfect equity so created is equivalent to legal title. *Sikes v. Seckinger*, 164 Ga. 96, 103 (137 SE 833) (1927) ("A perfect equity is, in Georgia, a good title even at law. . . ."); *Bass v. African Methodist Episcopal Church*, 150 Ga. 452, 456 (104 SE 437) (1920). Thus, Williams Chapel held title to the property at issue and, under the Book of Discipline, Williams Chapel held that title in trust for the national church. Accordingly, the trial court did not err when it ruled that the local church held the property in trust for the national church.

Presiding Justice Carley's dissent asserts that we must consider the version of the Book of Discipline in effect at the time Williams Chapel obtained title and suggests that the trust provision upon which we and the trial court rely was not in existence at that time. Legal commentators have noted that hierarchical churches, taking their cue from a concurrence in *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440, 449 (89 SC 601, 21 LE2d 658) (1969), and instruction given by the United States Supreme Court in *Jones v. Wolf*, supra, 443 U. S. at 606 in approving as constitutional the "neutral principles of law" approach,[4] amended church constitutions in the 1970s and 1980s to include a provision that local churches hold their property in trust for the use and benefit of the general church. See, e.g., Jeffrey B. Hassler, *A Multitude of Sins? Constitutional Standards for Legal Resolution of Church Property Disputes in a Time of Escalating Intradenominational Strife*, 35 Pepp. L. Rev. 399, 414 (2008); Kent Greenawalt, *Hands Off! Civil Court Involvement in Conflicts Over Religious Property*, 98 Columbia L. Rev. 1843, 1861 (1998). See also *In re Episcopal Church Cases*, 45 Cal.4th 467, 475 (198 P3d 66, 72) (2009). We have held that such language in a church constitution creates an implied trust for the benefit of the national church. See *Crumbley v. Solomon*, supra, 243 Ga. at 344-345. See also *Holiness Baptist Assn. v. Barber*, 274 Ga. 357, 359 (552 SE2d 90)

---

[4] In a concurrence, Justice Harlan stated that he did not read the Court's opinion "to hold that the Fourteenth Amendment forbids civilian courts from enforcing a deed or will which expressly and clearly lays down conditions limiting a religious organization's use of the property which is granted." 393 U. S. at 452. In *Jones v. Wolf*, supra, 443 U. S. at 606, the majority, responding to an argument made in the dissent, stated that

> [u]nder the neutral-principles approach, the outcome of a church property dispute is not foreordained. *At any time before the dispute erupts, the parties can . . . modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. . . . And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.*

(Emphasis supplied.)

(2001) (church discipline provision that Association "shall hold all church property" implies a trust for the benefit of the Association); *Ga. Dist. Council of Assemblies of God v. Atlanta Faith Memorial Church*, 267 Ga. 59 (472 SE2d 66) (1996). When a local church has a relationship with a national church and accepts the benefits afforded to it as a result of that relationship,[5] the local church cannot deny the existence of a trust for the national church as recited in the constitution of the national church. See *Crumbley v. Solomon*, supra, 243 Ga. at 345 (the local church that remained a member of the Association and accepted the benefits flowing from that relationship cannot later deny the existence of a trust for the benefit of the general church); *The Rector &c. of Christ Church in Savannah v. Bishop of the Episcopal Diocese of Ga.*, 305 Ga. App. 87 (3) (a) (699 SE2d 45) (2010) (cert. granted); *Sirmans v. Bd. of Trustees &c. of the United Methodist Church*, 295 Ga. App. 378, 384 (672 SE2d 423) (2008). In light of Williams Chapel's continued relationship with the national AME church and its continued acceptance of benefits resulting therefrom, Williams Chapel acknowledged the existence of a trust.

The statutes and the provisions of the Book of Discipline relied upon by Presiding Justice Carley's dissent speak in terms of deeds and documents of conveyance when discussing express and implied trusts of real property used for church purposes. See OCGA §§ 14-5-46, 14-5-47. However, these provisions and statutes are inapplicable in this case since there are no deeds or documents conveying the real property to the local or the national church. Presiding Justice Carley's dissent also construes the second paragraph of the section of the Book of Discipline at issue to create a requirement that a trust be created expressly in a written document or impliedly by certain actions of the local congregation. However, the second paragraph sets forth an exception to the general rule stated in the first paragraph (that the title held by the local church to real property is held in trust for the national church): when there is a written deed and it does not contain an express trust clause, a trust may nevertheless exist, based upon actions of the local congregation.

3. Appellants next contend that even if Williams Chapel held the property in trust for the national AME church, that trust was breached by the alleged failure of the national church to provide support and benefits to Williams Chapel. We know of no neutral

---

[5] As was stated earlier, Williams Chapel has had a relationship with the national AME church for over 70 years; has paid annual assessments to the national AME church, attended the annual conferences held by the national AME church, accepted pastoral candidates selected by the national AME church, used "AME Church" in its name for many years, and has the Book of Discipline provided by the national AME church.

principle of law that embodies appellants' position, and civil courts may not rely on doctrinal concerns or ecclesiastical principles when deciding disputes between churches. See *First Evangelical Methodist Church of Lafayette v. Clinton*, 257 Ga. 459 (360 SE2d 584) (1987); *Presbyterian Church in the United States v. Eastern Heights Presbyterian Church*, 225 Ga. 259 (1) (167 SE2d 658) (1969). As a result, we conclude that this contention is without merit.

4. Lastly, appellants contend the trial court erred when it failed to require the national AME church to pay immediately the outstanding mortgage on the property that was personally guaranteed by several members. The trial court's order required the removal of the names of appellants from all accounts, including the mortgage, and delivery of the accounts to the national AME church within four days of the trial court's order. Equitable relief is generally a matter within the sound discretion of the trial court and the exercise of that discretion will not be disturbed on appeal unless there has been an abuse of discretion. *Prime Bank v. Galler*, 263 Ga. 286 (4) (430 SE2d 735) (1993). When the trial court issued its final order in September 2009, there was in place a temporary order issued by the trial court in December 2008 that required the national church to assume at that point in time the indebtedness that was secured by the real property. In light of the temporary order, the trial court's employment of a four-day period within which appellants were to be relieved of their financial responsibility for the indebtedness was not an abuse of discretion.

*Judgment affirmed. All the Justices concur, except Melton, J., who concurs in Divisions 1, 3, and 4 and in the judgment, and Hunstein, C. J., Carley, P. J., Benham and Thompson, JJ., who concur in part and dissent in part, and Hines, J., who dissents.*

CARLEY, Presiding Justice, concurring in part and dissenting in part.

I fully agree with Division 1 of the per curiam opinion that this appeal comes within our jurisdiction over equity cases and that we therefore must resolve the merits thereof. However, I strongly disagree with Division 2 because, in the absence of any showing or ruling of estoppel, the relatively recent provision of the "Discipline" of the AME Church on which the majority relies cannot provide the basis for the requisite application of the "neutral principles of law" method to a title obtained by the local church decades prior to adoption of that provision. Furthermore, this analysis would make the enumerations addressed in Divisions 3 and 4 moot.

Where, as here, no funds are donated by the general church to

purchase and develop the local church property,

> [n]o trust in favor of the general church may be implied under the general trust statutes ([cits.]) . . . . However, [OCGA § 14-5-46] recognizes and validates deeds conveying land for church purposes according to the limitations set out in the deed and for use "according to the mode of church government or rules of discipline . . . ."

*Carnes v. Smith*, 236 Ga. 30, 38 (1) (222 SE2d 322) (1976).

In this case, the only deed is a security deed by trustees of Williams Chapel which does not expressly state that the property is held in trust for the AME Church. The affidavits of title, which contain no trust language, do not constitute deeds or other documents of conveyance. See OCGA § 44-2-20. Furthermore, the allegedly long relationship between the local church and the connectional organization, "without more, is insufficient to create an implied trust." *Coles v. Wilburn*, 241 Ga. 322, 323 (245 SE2d 273) (1978).

However, the constitutionally authorized "neutral-principles method, at least as it has evolved in Georgia, requires a civil court to examine certain religious documents, such as a church constitution, for language of trust in favor of the general church." *Jones v. Wolf*, 443 U. S. 595, 604 (III) (99 SC 3020, 61 LE2d 775) (1979). This Court "has looked consistently to the requirements of the church discipline in hierarchical denominations to avoid offending the prohibitions of the First Amendment." *Crumbley v. Solomon*, 243 Ga. 343, 345 (254 SE2d 330) (1979). See also *Holiness Baptist Assn. v. Barber*, 274 Ga. 357, 358 (552 SE2d 90) (2001).

The majority relies on the following portion of the "Discipline" of the AME Church: "The title(s) to all real, personal and mixed property held . . . by the local churches, shall be held IN TRUST for the [AME] Church, Inc. . . ." However, the record contains no evidence whatsoever regarding when this provision was adopted. Thus, Appellees, as plaintiffs in this quiet title action, have wholly failed to show that such provision was already in effect when the local church obtained title by gift. See *Simmons v. Community Renewal and Redemption*, 286 Ga. 6, 8 (2) (685 SE2d 75) (2009). To the contrary, examination of precedent involving the AME Church clearly shows that the trust provision at issue was not contained in the 1972 version or earlier versions of the quadrenially-updated Discipline. *Mt. Olive African Methodist Episcopal Church of Fruitland v. Bd. of Incorporators of the African Methodist Episcopal Church*, 703 A2d 194, 196 (I) (Md. 1997). The trial court found that Appellants' interest in the property began over 70 years ago. Indeed, the undisputed evidence shows that Williams Chapel built a church

on the property, and therefore its title was perfected, decades before 1972. Accordingly, the local church obtained title long before adoption of the trust provision on which the majority relies. "Although the neutral-principles approach to the resolution of property disputes includes consideration of any church constitutions under *Jones*, supra, it is appropriate to first consider ... the church constitution in place at the time" when the local church obtained title. *Arkansas Presbytery of the Cumberland Presbyterian Church v. Hudson*, 40 SW3d 301, 309 (IV) (Ark. 2001). It is well-settled that a party has a right to rely on the law in effect at the time he obtains title. See *Williams v. Brown*, 267 Ga. 215, 216 (1) (476 SE2d 753) (1996); *Arkansas Presbytery of the Cumberland Presbyterian Church v. Hudson*, supra at 310 (IV). There has been neither any showing nor ruling that the local church here is estopped from continued reliance on the Discipline which was in effect when it obtained title. Compare *Crumbley v. Solomon*, supra (where the local church participated in making a new disciplinary rule which implied a trust for the benefit of the general church). Therefore, exclusive control over the church property in this case is properly vested in the local church. *Arkansas Presbytery of the Cumberland Presbyterian Church v. Hudson*, supra.

As explained in a very recent law review article, favoritism of national churches in the manner set forth by the majority has First Amendment implications which are staggering. The majority's determination that a hierarchical church can unilaterally impress a trust in its favor of local congregational property depends on dicta from *Jones v. Wolf*, supra at 606 (III), as quoted in footnote 4 of the per curiam opinion, but effectively ignores

> the important qualification in the Jones v. Wolf dicta that the obligation of civil courts is to honor "the result indicated by the parties." [Cit.] In simpler language, civil courts must give effect to bilateral agreements, and a unilateral declaration of trust by the putative beneficiary is not a bilateral agreement. . . . [The majority's] decision to grant hierarchical churches a unique authority to impress a trust upon property they do not own merely by declaring that the church is the trust beneficiary of that property is [a] . . . startling cession of governmental power to a religious organization. This is . . . the . . . extraordinary power to seize property by divesting others of their beneficial interests in the property. . . . Donors of property to local churches are not necessarily members of the hierarchical church. Such donors have no assurance that their intent to transfer property in trust for the exclusive benefit of the local

church, and not the hierarchical church, will be honored. All the general church would need to do is alter its own internal governing instruments to nullify the explicit intentions of donors.

Calvin Massey, *Church Schisms, Church Property, and Civil Authority*, 84 St. John's L. Rev. 23, 46-49 (III) (2010). Accordingly, I believe that we should follow the persuasive authority of *Arkansas Presbytery of the Cumberland Presbyterian Church v. Hudson*, supra at 309-310 (IV).

Moreover, even if the majority were justified in relying upon a trust provision added to the Discipline long after the local church obtained title by gift, that provision is not an existential proposition, and instead imposes a "requirement" on local churches "that property held by 'the local churches' shall be held 'IN TRUST' for the [AME] Church, Inc." *African Methodist Episcopal Church v. Stewart*, 28 S3d 1044, 1046 (La. App. 2009). The immediately succeeding provision begins with the transition "However" and addresses the situation where, as here, the local church has not taken steps which meet that requirement. This second provision specifically deals with "the absence of an IN TRUST clause as indicated herein, in deeds, and documents of conveyance previously executed." This language refers back to the trust requirement of the first provision, as it is the only other provision which even mentions holding property in trust, and treats that provision as contemplating the execution of some deed or document of conveyance containing an "in trust" clause. See *Coles v. Wilburn*, supra at 324. Under the terms of the second provision, the absence of such an express "in trust" clause in some appropriate document "shall not exclude a local church from or relieve it of its Connectional character and responsibilities" nor "excuse or absolve a local congregation" from its responsibilities and accountability to the AME Church, provided that certain conditions are met, including "conveyance of said property to the trustees of a local church or agency to the AME Church, Inc." The language of this particular condition

is at best ambiguous. Even so, nothing in [any deed, or in the affidavits of title for that matter,] can be interpreted to convey the property "to the A.M.E. Church, Inc." . . . Conveyance is to [or by] the local church, but not "to the A.M.E. Church, Inc." . . . Applying the neutral principles of law that are evoked by our examination of the documents and evidence in purely secular terms . . . , [I] conclude that [Appellees have] failed to establish compliance with a necessary provision of the Discipline. [The] A.M.E.'s Discipline,

therefore, does not contain regulations that effectively vest control of the property at issue in it under the facts of this case.

*African Methodist Episcopal Church v. Stewart,* supra at 1047-1048. There simply are "no 'neutral principles of law' entitling the [A.]M.E. Church to the local church . . . property." *Coles v. Wilburn,* supra at 324 (where the Discipline contemplated the creation of express trusts by deed to the general church, and no deed to the general church existed).

Because of the majority's reliance on an inapplicable provision of the Discipline and its strained interpretation thereof, I respectfully concur in part and dissent in part to the affirmance of the trial court's judgment.

I am authorized to state that Chief Justice Hunstein joins in this opinion.

BENHAM, Justice, concurring in part and dissenting in part.

1. Because I do not believe this appeal falls within this Court's subject-matter appellate jurisdiction over "[a]ll equity cases" (1983 Ga. Const., Art. VI, Sec. VI, Par. III (2)), I believe the appeal should be transferred to the Court of Appeals, which has appellate jurisdiction of cases in which jurisdiction has not been conferred upon this Court by the Georgia Constitution. 1983 Ga. Const., Art. VI, Sec. V, Par. III. Accordingly, I respectfully disagree with Division 1 of the per curiam opinion.

For purposes of determining appellate jurisdiction,

"[e]quity cases" are those in which a substantive issue on appeal involves the legality or propriety of equitable relief sought in the superior court — whether that relief was granted or denied. Cases in which the grant or denial of such [equitable] relief was merely ancillary to the underlying issues of law, or would have been a matter of routine once the underlying issues of law were resolved are not "equity cases."

*Beauchamp v. Knight,* 261 Ga. 608 (1) (409 SE2d 208) (1991). Where equitable relief routinely follows upon the determination of legal issues, "there is no question of 'the legality or propriety of equitable relief' and the case is not one in equity." *Lamar County v. E.T. Carlyle Co.,* 277 Ga. 690 (1) (594 SE2d 335) (2004). Stated another way, this Court's equity appellate jurisdiction depends upon a substantive issue involving the legality or propriety of equitable relief; however, there exists no question of the legality or propriety of

equitable relief that invokes this Court's equity jurisdiction when the equitable relief at issue is merely ancillary to the determination of the issues of law.

The equitable relief awarded in this case — removal of the names of the local church and its trustees from bank accounts, mortgages, insurance policies, and the like — flows directly from the legal determination that the national church, pursuant to church discipline, owns the real and personal property at issue and the local church holds said property in trust for the national church. Since the equitable relief routinely follows upon the determination of the legal issue, "there is no question of 'the legality or propriety of equitable relief' and the case is not one in equity." *Lamar County v. E.T. Carlyle Co.*, supra, 277 Ga. 690 (1). The approach of Division 1 of the per curiam opinion — that a litigant's allegation of error with regard to the trial court's grant or denial of ancillary equitable relief removes the case from the Court of Appeals's appellate jurisdiction and reinstates the case as an equity case invoking this Court's appellate jurisdiction — up-ends this Court's 20-year effort, from *Beauchamp v. Knight*, supra, in 1991 to *Reeves v. Newman*, 287 Ga. 317 (695 SE2d 626) (2010) in 2010, "to delineate as clearly as possible the scope of its jurisdiction over 'equity cases.'" *Redfearn v. Huntcliff Homes Assn.*, 271 Ga. 745 (1) (524 SE2d 464) (1999). The majority's approach smudges the bright-line rule this Court has been buffing to a sheen and enables a litigant to select the appellate forum in which a case with equitable features is to be heard, a practice this Court rejected in *Beauchamp v. Knight*, supra, 261 Ga. at 609, and in *Krystal Co. v. Carter*, 256 Ga. 43, 44 (343 SE2d 490) (1986). Just as we have transferred to the Court of Appeals those appeals in hierarchical church disputes that do not invoke this Court's appellate jurisdiction over cases involving title to land (compare, e.g., *Body of Christ Overcoming Church of God v. Brinson*, 285 Ga. 613 (680 SE2d 856) (2009) (petition to quiet title); *First Christ Holiness Church v. Owens Temple First Christ Holiness Church*, 282 Ga. 883 (655 SE2d 605) (2008) (petition to quiet title)) because the equitable relief granted or denied by the trial court is ancillary to the underlying legal issue of whether it is the local church or the national church that has the right to control the local church property, so, too, we should transfer this appeal to the Court of Appeals since this Court's equity jurisdiction is not invoked. See, e.g., *The Rector &c. of Christ Church v. Bishop of the Episcopal Diocese of Ga.*, 305 Ga. App. 87 (699 SE2d 45) (2010) (cert. granted); *Timberridge Presbyterian Church v. Presbytery of Greater Atlanta*, 307 Ga. App. 191 (705 SE2d 262) (2010) (transferred to the Court of Appeals by this Court); *St. Mary's of Egypt Orthodox Church v. Townsend*, 243 Ga. App. 188 (532 SE2d 731) (2000) (transferred by

this Court to the Court of Appeals).

2. Because I agree with the per curiam opinion's determination that the trial court correctly ruled that the real property at issue is held by Williams Chapel in trust for the national AME Church, I concur in Divisions 2-4.

I am authorized to state that Justice Thompson joins me in concurring in part and dissenting in part, and Justice Hines joins me in dissenting to Division 1 of the per curiam opinion.

HINES, Justice, dissenting.

For the reasons stated in Division 1 of Justice Benham's opinion concurring in part and dissenting in part, I do not believe that this Court has jurisdiction of this appeal, and accordingly I join in Division 1 of his opinion. As I would not reach the merits of the appeal, I must dissent to Divisions 2, 3, and 4 of the per curiam opinion.

DECIDED NOVEMBER 30, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Thomas A. Nash, Jr.*, for appellants.
*Grady K. Reddick, Edwards & Youmas, Brenda C. Youmas*, for appellees.