**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 23, 2016**

# In the Court of Appeals of Georgia

A16A0386. JOHNSON et al. v. THOMAS.

RAY, Judge.

This appeal involves a dispute over church property between the national Christian Methodist Episcopal Church ("CME")[1] and the trustees, pastor, and former members of Bethel Christian Methodist Episcopal Church (jointly hereinafter referred to as "Bethel Church"), a local subordinate church of CME that has sought to disaffiliate from CME and has retained control over the church property.[2] At issue is

---

[1] The named plaintiff is Jane Thomas, who filed the instant suit in her capacity as the presiding elder of the Sixth Episcopal District of Georgia of the Christian Methodist Episcopal Church. Thomas filed the petition on behalf of CME for declaratory judgment and injunctive relief, alleging that pursuant to The Book of Discipline the Bethel Church property was held in trust for the CME, which is "the legal and equitable owner" of the property.

[2] Title is in dispute as to the parcel of real estate located at 2475 Pope Road in Crawford County. The dispute also involves the ownership and possession of

whether the church property is impressed with a trust in favor of CME. After an evidentiary final hearing,[3] the trial court ruled that, under the terms of the Book of Discipline, the property and church building claimed by the Bethel Church was held in trust on behalf of CME. Bethel Church appeals from that order, arguing that the trial court did not properly consider the language of the deed that transferred the church property to Bethel Church in relation to other specific facts. We affirm the trial court.

In its petition, CME asserts that it is a hierarchical "religious denomination[, which] is organized and functions solely as a connectional church with subordinate governing districts and location church[es,]"[4] and it alleged that for over 100 years, Bethel Church has been "a subordinated, connectional member of the national CME

_____

personal property of Bethel Church.

[3] This is the second appearance of this case before this Court. In *Thomas v. Johnson*, 329 Ga. App. 601 (765 SE2d 748) (2014), this Court vacated the trial court's judgment in favor of the defendants on the grounds that the trial court deprived CME of its right to due process because it failed to allow CME to present witnesses and evidence to support its claims at the final hearing. Upon remand, this Court instructed the trial court to conduct a proper evidentiary hearing. This appeal ensued from the trial court's final order issued after the conclusion of the subsequent evidentiary hearing. We note that there was a different presiding judge in this case upon its remand for an evidentiary hearing.

[4] Bethel Church does not dispute that CME is a hierarchical church.

2

church," which is "subject to the mode of church government set forth in the CME Book of Discipline."[5]

Evidence presented at the final hearing shows that Bethel Church has been affiliated with the CME church since at least the 1960s; abided by the CME policies and customs; accepted the pastorate and literature of the CME ministers; paid conference assessments and dues to CME; and participated as a subordinate member of CME at annual and quarterly conferences.

On March 13, 1996, a quitclaim deed was executed by C. C. Ranch, Inc., a Florida corporation, which conveyed the property upon which Bethel Church and its cemetery resides to "Beulah Johnson, Solomon McCrary, Marion Shannon, Lucille Ezell, and Thomas Howard as the Trustees of Bethel Church and to their successors in office (Bethel Church being an unincorporated religious association) of Crawford County, Georgia, their successors, heirs, executors, administrators[,] and assigns." Cynthia Howard, Bethel Church's former secretary, testified that Bethel Church existed on that property prior to the execution of the 1996 deed and that the congregation had sought to acquire a deed to the property because they needed it to

_____

[5] At the final hearing, Bethel argued that it had been a member of CME only since the 1950s or 1960s.

3

secure financing from a local bank to repair the church building. Howard explained that the Bethel Church congregation had requested that the lawyers drafting the deed use language indicating that the property would remain with Bethel Church and that they did not want the church property "to go back into the hands of the CME organization because . . . we were the purchasers of the land [and CME] didn't give us money towards purchasing it." After the deed was executed, Bethel Church then secured bank financing to construct an attached fellowship hall, paint the church, and to purchase additional pews and furniture. Oscar Hall, a former minister of Bethel Church, testified that the 1996 deed was drafted because the presiding elder of CME had asked the church to do so upon discovering that no deed to the property existed. After the execution of the 1996 deed, Bethel Church continued to operate as a member church of the National CME.

In January 2011, the majority of the Bethel Church congregation voted to adopt a resolution severing Bethel Church's affiliation with the national CME. The resolution was to be retroactive to January 1, 2011. J. W. Vincent Jefferson, a member of Bethel Church, explained that the congregation voted to do so because its congregation, consisting of only 30 members, simply could not afford to pay the bi-annual CME assessment fees and that the congregation felt like CME "didn't know

who we were, [and] have never done anything for the church." He further noted that the pastors provided by CME for Bethel Church were not adequate and, despite this, the congregation still had to pay each pastor's salary. Jefferson explained that the Bethel Church building was "deteriorating" and that they did not have the funds to repair the building, meet the church's financial obligations and pay the CME assessments. Because of these issues, Jefferson believed that Bethel Church would no longer exist if it had remained a member of CME. Subsequent to the resolution terminating their affiliation with CME, Bethel Church passed a separate resolution changing its name to Bethel Independent Church of Crawford County.

On January 09, 2013, CME filed its petition for declaratory judgment and injunctive relief, alleging that pursuant to the Book of Discipline that the Bethel Church property was held in trust for CME, which is "the legal and equitable owner" of the property. The petition alleged that, regardless of the names of the grantees on the 1996 deed conveying the property to Bethel Church, the Bethel Church members were wrongfully exercising control over the property because it was held in trust for CME by the church members as trustees according to CME's Book of Discipline.

After the evidentiary hearing, the trial court ruled in favor of CME. In its order, the trial court noted that it relied upon the "neutral principles of law" that govern the

dispute, including the CME Book of Discipline, to determine that local churches, such as Bethel Church, hold title to any property, real or personal, in an implied trust for the national CME church. As a result, the trial court held that Bethel Church had only "'permissive use' of the property, and its trustees have continually held the property in trust for the benefit of the National CME." The trial court then held that the members of the Bethel Church were banned from, inter alia, interfering with CME's use of the Bethel Church property, threatening or harassing CME church members, or using the properties or money of CME in violation of its rules and disciplines.

On appeal, Bethel Church argues that the trial court's judgment was in error because it did not consider the fact that the language of the 1996 deed conveyed the property to Bethel Church trustees only and sought to exclude the national CME.

We certainly are mindful that a civil court is not allowed to intervene in doctrinal disputes within a church. However, where a dispute regarding church property can be resolved without regard to doctrinal disputes, a civil court is authorized to render a decision that enforces the legal rights of the parties. *Rector, Wardens and Vestrymen of Christ Church in Savannah v. Bishop of the Episcopal Diocese of Ga., Inc.*, 305 Ga. App. 87, 88 (699 SE2d 45) (2010). A hierarchical

6

church, such as CME, is "organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." (Punctuation and footnote omitted.) Id. When resolving property disputes between a national hierarchical church and a local church, "we must use neutral principles of law to determine whether the local church or the parent church has the right to control local property. Neutral principles of law include state statutes, corporate charters, relevant deeds, and the organizational constitutions and bylaws of the denomination." (Punctuation and footnotes omitted.) Id.

> We review all of these materials, keeping in mind that the outcome of these church property disputes usually turns on the specific facts presented in the record, that the neutral principle factors are interrelated, and that our ultimate goal is to determine 'the intentions of the parties' at the local and national level regarding beneficial ownership of the property at issue before the dispute erupted in a legally cognizable form.

(Citations and punctuation omitted.) *Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc.*, 290 Ga. 272, 276-277 (2) (719 SE2d 446) (2011). "A trust in favor of the [national] church can be created by the deed on the property, can be implied under state statutes, or can be required by the constitution

7

of the [national] church." (Citation omitted.) *Kemp v. Neal*, 288 Ga. 324, 326 (2) (704 SE2d 175) (2010) (per curiam).

Because there is no dispute that CME is hierarchical, we must apply the neutral principles of law applicable to this case, which include the 1996 deed conveying the property to Bethel Church and the governing church documents of CME, including the Book of Discipline. A thorough review of these records and documents leads us to conclude that the trial court correctly held that the Bethel Church property was held in trust for CME.

1. *Church Governing Documents*. The CME Church was organized in 1870. The CME is governed by the Book of Discipline of the Christian Methodist Episcopal Church ("Book of Discipline") "which prescribes the mode of church government applicable to all the subordinate local churches." The Book of Discipline is revised every four years. Since it is uncontroverted that Bethel Church was a connectional member of the CME since at least the 1960s until it sought to end its affiliation with the CME in 2011, there is no question that the trustees held the Bethel Church property subject to the Book of Discipline.[6] Indeed, at the time of the 1996 deed

---

[6] Our appellate record only contains a few select pages from the 1994 and 2010 versions of the Book of Discipline.

conveying the Bethel Church property to the trustees of the Bethel Church, Bethel Church was still holding itself out as a member of CME. In support of its argument that the Book of Discipline mandates that local churches hold their properties in trust for the parent CME church, CME points to ¶ 602 of the Book of Discipline captioned "All Titles in Trust."[7] Paragraph 602 provides that

> The [CME] is organized and operates as a Connectional Structure. Titles to all properties held at General, Episcopal District, Annual or District Conference levels, local churches, or an agency or institution of the church *shall be held in trust for the [CME] Church and subject to the provisions of its Discipline.* Titles not actually held by the General Conference of the [CME] Church, but instead are held by local churches, Districts, Annual Conferences, Episcopal Districts, agencies or organizations of the denomination or unincorporated bodies of the denomination are held in trust by Boards of Trustee established for the purpose of holding or administering properties.

(Emphasis supplied.)

---

[7] The final hearing transcript only contains the 2010 version of ¶ 602 and a fragment of the 1994 version of ¶ 602 of the Book of Discipline. The trial court's final order acknowledges the missing portion of the 1994 version, but notes that it appears that it is "essentially the same" as the 2010 version. Neither party disputes this finding on appeal.

The Book of Discipline at ¶ 602.2 §5 additionally provides that when a deed, such as the 1996 deed conveying the Bethel Church property, does not contain a trust clause in favor of the CME,

> the absence of a trust clause . . . shall in no way exclude a local church . . . from or relieve [i]t of its Connectional responsibilities to the [CME]. Nor shall it absolve a local congregation or church agency or Board of Trustees of its responsibility and accountability to the [CME]; provided *that the intent and desires of the congregations or Board of Trustees . . . are shown by any or all of the following indications*: (a) The conveyance of the property to the trustees of a local church or agency of the [CME]; (b) The use of the name, customs and polity of the [CME] in such a way as to be thus known to the community as part of the [CME][;] (c) The acceptance of the pastorate of ordained ministers appointed by the Presiding Bishop, or use of the tax exempt privileges of the [CME][; and] (d) Title to all properties of the local church . . . shall be held subject to the provisions of the Discipline, whether title to the same is taken in the name of the local church trustees, Episcopal District trustees, Departments, agencies or in the name of a corporation organized for the purpose, or otherwise.

(Emphasis supplied.)

The evidence presented at the final hearing shows that, despite the testimony that Bethel Church sought to draft the 1996 deed in such a manner as to prohibit the CME from retaining ownership of the property, Bethel Church demonstrated its intent

to be bound by the Book of Discipline and to be a participating member of the CME through at least three of the above enumerated indications in ¶ 602.2 §5. Accordingly, we find that the terms of the CME Book of Discipline weigh in favor of a finding that the property was held in trust for CME. See *Holiness Baptist Assoc., Inc. v. Barber*, 274 Ga. 357, 357-358 (552 SE2d 90) (2001) (church discipline provision that Association "shall hold all church property" implies a trust for the benefit of the Association) (punctuation omitted); *Crumbley v. Solomon,* 243 Ga. 343, 343-346 (254 SE2d 330) (1979) (even though local church, by majority vote of its members, attempted to withdraw from the parent church, control of the church property properly belonged with parent church under the requirements of the church discipline, which implied a trust of the real property in favor of the parent church). See also OCGA §§14-5-46, 14-5-47.

2. *Deed.* The parcel of real estate in dispute has been used by Bethel Church operating as a member of CME for several decades before the 1996 deed that memorialized the transfer. Whether the purpose of the 1996 deed was to secure financing for repairs or to comply with the request of a CME Presiding Elder, the deed conveyed the property upon which Bethel Church and its cemetery resides to "Beulah Johnson, Solomon McCrary, Marion Shannon, Lucille Ezell, and Thomas

11

Howard as the Trustees of Bethel Church and to their successors in office (Bethel being an unincorporated religious association) of Crawford County, Georgia, their successors, heirs, executors, administrators[,] and assigns[.]" Bethel Church points to evidence that its congregation sought to draft the terms of the deed to exclude the CME and its belief that it was a "de facto" member of CME that did not benefit from its relationship with CME as factors that should be weighed in its favor. However, at the time of the 1996 deed, Bethel Church was bound by the Book of Discipline which held that all deeds and properties are to be held in trust for CME. Further, even though Bethel Church was dissatisfied with its relationship with the CME, it continued to operate as a member for several years after the execution of the 1996 deed by paying assessments to CME, attending annual and quarterly CME conferences as well as accepting pastors appointed by CME. It was not until the Bethel Church congregation voted to adopt a resolution denouncing its affiliation with CME in 2011 that it sought to disassociate itself from CME.

We are unpersuaded by Bethel Church's argument that the terms of the 1996 deed circumvented the applicable rules of the Book of Discipline regarding the ownership of church property at the time the deed was executed. "A local church, if it desires to remain independent of the influence of a parent church body, must

maintain this independence in the important aspects of its operation, – e. g., polity, name, finances. It cannot, as here, enter a binding relationship with the parent church which has provisions of implied trust in its [governing documents], yet deny the existence of such a relationship." *Carnes v. Smith*, 236 Ga. 30, 39 (1) (222 SE2d 322) (1976). See also *Kemp*, supra ("When a local church has a relationship with a national church and accepts the benefits afforded to it as a result of that relationship, the local church cannot deny the existence of a trust for the national church as recited in the [governing documents] of the national church") (Citations and footnote omitted).

In this case, it is undisputed that CME is a hierarchical church, that Bethel Church was an active member of CME from at least the 1960s until 2011, and that Bethel Church was subject to the CME's Book of Discipline. The Book of Discipline provides that Bethel Church, as a local church, shall hold its properties in trust for the CME. See *Barber*, supra. This requirement is "irrespective of [Bethel] Church's continuing membership in" CME. Id.

*Judgment affirmed. Doyle, C. J., and Andrews, P. J., concur*.

13